**UNITED STATES of America, Appellee,**

v.

**Jose Rafael PEREZ–FRANCO, Defendant, Appellant.**

**No. 88–1768.**

United States Court of Appeals, First Circuit.

Heard Jan. 13, 1989.

April 28, 1989.

John F. Cicilline, Providence, R.I., for appellant.

James H. Leavey, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for the U.S.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

Defendant-appellant Jose Rafael Perez–Franco appeals the sentence he was given pursuant to the new Sentencing Guidelines. He claims that the district court incorrectly calculated his offense level by refusing to give him credit for acceptance of responsibility as provided for under the Guidelines. We hold that a defendant needs to accept responsibility only for the counts to which he is pleading guilty. We remand.

## I. BACKGROUND

The defendant was indicted on five counts: Count I charged conspiracy to deliver and possess with intent to distribute heroin; Count II charged delivery of heroin on October 16, 1987; Count III charged delivery of heroin on October 26, 1987; Count IV charged possession with intent to distribute one kilogram or more of heroin; and Count V charged possession with intent to distribute 100 grams or more of heroin. The defendant entered into a plea agreement with the government under which he would plead guilty to Count IV in exchange for the government dismissing Counts I, II, and III, and agreeing to recommend a sentence of ten years imprisonment, the statutory minimum, for Count IV. Count V had been dismissed prior to the plea agreement.

As part of the preparation for the presentence report, the United States probation officer asked the defendant to explain his involvement in the offense. The defendant responded that: "Wiley gave me her-

oin so I could give it to Victor, who I now know was the informant. I was supposed to get some money, but I don't know how much. There was 410 packets of [heroin containing] 50 bags each." The presentence report submitted by the probation officer computed the defendant's offense level under the Sentencing Guidelines as 32. This level did not include a two point reduction for "acceptance of responsibility," as permitted by the Guidelines under certain circumstances. This two point difference impacts on the length of the sentence under the Guidelines so that a sentence of 108–135 months imprisonment is given for level 30, and 135–148 months is given for level 32. Within seven days of notification of the probation officer's recommendation, the defendant objected to the failure to award him two points for acceptance of responsibility. The heart of the disagreement was whether the Sentencing Guidelines required the defendant to accept responsibility only for Count IV, the count to which he had pled guilty, or whether he also had to accept responsibility for the other counts in the indictment that were to be dismissed.

During the sentencing hearing, defense counsel maintained that the defendant "should not disclose the information relating to Counts I, II, III and V because to do so would cause him to incriminate himself in a situation where we have a conditional plea agreement." He went on to argue that if the judge were "to reject this [plea] agreement out of hand today at sentencing, [the defendant] would have incriminated himself on counts in which he still maintains a not guilty plea." Defense counsel summed up his argument by stating that "the only thing [the defendant] needs to accept responsibility for is the count he's pleading on, unless he otherwise has some guarantee that he will never be prosecuted for the other counts in the indictment."

The government was in complete agreement with the defendant on this issue, and also urged the court to grant the defendant the two point reduction. At the sentencing hearing, the prosecutor asserted:

I certainly agree that [the defendant] should have received the two points in this case ... because these defendants pleaded guilty to Count IV of the indictment.... [T]hey admitted that they knew it was heroin; they knew it was some 20 thousand packets because they mentioned 410 browns. Each brown has 50 packets. So they admitted that they knew they were possessing heroin; that it was over a kilogram and they possessed it with the intent to distribute. In my view that is acceptance of responsibility.

The prosecution also agreed with the defendant that the counts that they had agreed to dismiss as part of the plea negotiations "technically ... [were] still pending."

The district court rejected the arguments of both the defense and prosecution, and ruled that the Sentencing Guidelines required a defendant to admit responsibility for *all* his criminal activity, not just the counts to which he was pleading guilty, even if that meant incriminating himself on the other counts. The court reiterated this position on several occasions during the sentencing proceedings:

I am going to conclude that acceptance of responsibility means total candor by the defendant as to his total criminal conduct.... [T]he legislature intended that there had to be *full disclosure albeit it might be incriminating as to other counts....* (Emphasis added).

\* \* \* \* \* \*

I've already read into the record my reasons for what I've done in spite of the arguments counsel has made that the defendant should not be required to give information, which *would incriminate him on other counts and that is exactly what would have happened in this case....* (Emphasis added).

\* \* \* \* \* \*

[F]ull disclosure means a full disclosure. *Total acceptance of responsibility albeit serious consequences as to other counts.* (Emphasis added).

The court made its reasons for refusing the two point reduction very clear:

[The defendant] was properly interviewed by the probation officer....

[T]he defendant chose only to offer limited comments concerning his activities as they pertain to Count IV of the indictment. He did not explain his behavior that took place on October 26, 1987 ... which described the delivery of a heroin mixture.... To me, for these reasons, it is clear that when the defendant was afforded the opportunity to candidly disclose the full scope of his offense behavior in this case, he failed to do so.

The court concludes, therefore, that the defendant should not receive a two level reduction from the base offense score.

The district court, however, did acknowledge that there was some merit in the argument of the defendant and government that the defendant was not required to incriminate himself on the counts to which he was not pleading guilty, and that the issue could only be resolved by this Court of Appeals.[1]

After the district court made clear that it was going to require acceptance of responsibility on all the charges in the indictment, not just the one that the plea agreement covered, the defendant, during allocution, did in fact accept responsibility for his acts in Counts I, II and III, as well as those in Count IV. The court, nevertheless, ruled that it would not reduce the defendant's offense level, and, using the Guideline level of 32, sentenced the defendant to 135 months imprisonment.

The defendant appealed on the grounds: (i) that the court had improperly applied the Sentencing Guidelines by denying him cred-

it for acceptance of responsibility based on his statements concerning Count IV to the probation officer; and, (ii) that his in-court statement during allocution covering all the counts entitled him to credit for acceptance of responsibility.

## II. THE SENTENCING GUIDELINES

■ We first look to the actual language of the Sentencing Guidelines. Section 3E1.1 deals with credit to be given a defendant for acceptance of responsibility:

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal *responsibility for his criminal conduct,* reduce the offense level by 2 levels.

(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

United States Sentencing Guidelines, § 3E1.1 (January 15, 1988) (emphasis added).

This current version was amended from the previous version of October, 1987, in which subsection (a) stated that the defendant had to accept personal responsibility for "the offense of conviction," rather than for "his criminal conduct." The district court ruled, and the government now argues in this appeal,[2] that this amendment

---

**1.** During the sentencing hearing, the prosecutor offered a compromise in which he agreed for this particular case not to use the defendant's statements concerning the counts to which he had not pled guilty in any subsequent prosecution. The judge however, refused to accept this proposal, apparently wanting the issue in general to be resolved. The colloquy consisted of:

MR. LEAVY: I think it would resolve this problem at least as far as these defendants are concerned, the issue would have to be decided at some other date I suppose, and that would be that the Government— ... in this instance, as to each of these defendants, the Government will agree not to use any statements made to the Probation Department against these defendants just as we would if, in fact,

the Court had ordered immunity for those statements but the Government will agree not to use those statements.... [The defendants] could be reinterviewed and then the Court could determine whether or not they were, in fact, candid.

THE COURT: I appreciate that very much but I think we've got to bring this to a head, and I've given this more thought and I concluded that I'm going to stand by my position and I'll put my reasons on [record].

**2.** The government has completely reversed its position on this appeal from the position it took during the district court proceedings on the issue of the defendant's right to the two point reduction for acceptance of responsibility. We do not question its doing so, given the district

to the Guidelines mandates that a defendant accept responsibility for *all* his criminal conduct, irrespective of whether or not the conduct relates to the counts to which he is specifically pleading guilty as part of a plea agreement.

We find that the Sentencing Guidelines cannot be interpreted to mean what the government now urges. If a defendant's "criminal conduct" is interpreted to mean literally "all of his criminal conduct," then not only does it include counts for which he was indicted and to which he has not pleaded guilty, but also must include criminal activity relating to the current offense for which he may not have been indicted, as well as any past criminal conduct. This reading could not possibly have been what the drafters intended. Nor can we accept the government's argument that "criminal conduct" means "all criminal conduct," while at the same time *limiting* "all criminal conduct" to mean only that included in the original indictment. The government has offered us no reason to adopt this particular interpretation—in our view, a strained one—of "all criminal conduct."

Once "criminal conduct" is seen as not meaning literally "all criminal conduct," then the basis for the government's position disappears, and we are left to appropriately interpret the Guideline's meaning. We conclude that the only plausible reading of the Guidelines for cases in which a plea agreement has been made, is that "acceptance of personal responsibility for his criminal conduct" means the criminal conduct to which the defendant pleads guilty. In the instant case, this means that the Guidelines require acceptance of responsibility for the criminal conduct which forms the basis of Count IV of the indictment.

Moreover, while there is surely merit to the argument that the drafters amended the original wording for a reason, we do not believe that the only possible reason is the one advanced by the government—that it was done to ensure that a defendant accept responsibility for all of his alleged criminal activity, as opposed to just the counts to which he is pleading guilty. An equally plausible rationale for the amendment is that the original "offense of conviction" language was believed to be ambiguous, because on its face it implies the restrictive interpretation that a defendant actually had to be tried and *convicted* of an offense. Such a reading would incorrectly exclude guilty pleas, where no trial occurs. It is instructive to take cognizance of what the Sentencing Commission itself had to say regarding the amended wording: "Section 3E.1(a) is amended by deleting 'the offense of conviction' and inserting in lieu thereof 'his criminal conduct.' *The purpose of this amendment is to clarify the guideline.*" Appendix C: Amendments to the Sentencing Guidelines Manual of October 1987. (Emphasis added). This is the only comment we could find on the reasons for the amendment. There may have been clarifying reasons other than the ones discussed above, but we have been unable to think of any.[3]

### III. POSSIBLE USE OF DEFENDANT'S STATEMENTS IN FUTURE TRIALS

The defendant argues that if he had answered questions regarding acceptance of responsibility for the unpled counts, he would have incriminated himself and that his statements could have been used against him in a subsequent trial. The government's current position is that while it is true that other counts against the defendant were still pending at the time of the interview with the probation officer, it is at best a technical argument because the government had agreed to dismiss those counts at the time of sentencing. We find

court's position. By supporting the court below, the government makes it easier for us to examine all aspects of this controversy.

**3.** Chief Judge Campbell concurs in the reasoning of this opinion through part II, and in the court's judgment. As he believes that a proper reading of the Guidelines leads to the result

herein, he thinks it unnecessary to consider whether and in what respects a different reading might violate the Fifth Amendment privilege against self-incrimination. Accordingly he does not join in the court's reasoning in any parts of the opinion following part II.

this caveat by the government to be unpersuasive. A plea bargain can unravel at any time, for any number of reasons. For example, the defendant or prosecutor might breach some aspect of the agreement, thereby invalidating the entire agreement. Moreover, the judge need not accept the plea agreement. *See* Fed.R.Crim.P. 11(e)(4).[4] Nor need the judge automatically accept a dismissal of an indictment filed by the government. *See* Fed.R.Crim.P. 48.[5] While this discretion by a judge to deny a prosecutor's motion to dismiss has been narrowly interpreted by the courts, there still are certain situations where the judge may do so. *See Rinaldi v. United States,* 434 U.S. 22, 30, 98 S.Ct. 81, 85, 54 L.Ed.2d 207 (1977) (trial court can properly deny the prosecutor's motion to dismiss if it was tainted with impropriety or if it was motivated by considerations clearly contrary to manifest public interest).

■ Not only is it error for the government to ignore the chances of a plea bargain falling apart, it is equally erroneous for it to fail to acknowledge that certain statements made by the defendant during plea negotiations are admissible in other

litigation. It is well established that statements made for the purpose of one case are not necessarily immunized from use in other trials. For example, unwithdrawn guilty pleas in a state court have been admitted for their evidentiary value in subsequent federal prosecutions involving the same event. *See* J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 410[06] at 410–47 (1988). And statements relating to guilty pleas made in one state court can also be used in trials in a different state. *See, e.g., United States v. Benson,* 640 F.2d 136, 138 (8th Cir.1981) (statements made in connection with a guilty plea in a Texas district court were admissible in trial in a North Dakota district court). Moreover, statements made in connection with criminal pleas might be able to be used in subsequent civil proceedings. *See* Weinstein, ¶ 410[06] at 410–44.

■ Since statements made in plea negotiations may be admissible in other litigation, we must inquire whether statements made to a probation officer in preparation for a presentence report are admissible. We conclude that Fed.R.Evid. 410[6] does

4. Fed.R.Crim.P. 11(e) states in relevant part:
   (1) In General. The attorney for the government and the attorney for the defendant ... may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty ... the attorney for the government will do any of the following: (A) move for dismissal of other charges; or (B) make a recommendation ... for a particular sentence ... [which] shall not be binding upon the court; or (C) agree that a specific sentence is the appropriate disposition of the case.... (2) Notice of Such Agreement.... If the agreement is of the type specified in subdivision (e)(1)(A) or (C), *the court may accept or reject the agreement,* or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report....
   (4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contem-

plated by the plea agreement. (Emphasis added).

5. Fed.R.Crim.P. 48(a) states in relevant part: "By Attorney for Government. The Attorney General or the United States attorney may *by leave of court* file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate." (Emphasis added).

6. Fed.R.Evid. 410, as amended in 1979, states in relevant part:
   *Inadmissibility of Pleas, Plea Discussions, and Related Statements.*
   Except as otherwise provided in this rule, *evidence of the following is not,* in any civil or criminal proceeding, *admissible* against the defendant who made the plea or was a participant in the plea discussions:
   (1) a plea of guilty which was later withdrawn;
   (2) a plea of nolo contendere;
   (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas, or
   (4) *any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of*

not offer protection to the defendant under such circumstances. Rule 410, as amended in 1979, explicitly prevents statements made in the course of plea discussions from being used against a defendant in a subsequent proceeding if they were "made to a prosecuting authority" and do not result in a guilty plea. This rule has been consistently interpreted by the courts to protect only those statements made by a defendant to the prosecuting attorney himself. *See, e.g., United States v. Porter,* 821 F.2d 968, 976–77 (4th Cir.1987) (statements made to Customs officer in which defendant admitted involvement and offered to help catch co-defendant, not subject to Rule 410 because they were not made to the prosecuting attorney); *United States v. Sebetich,* 776 F.2d 412, 421–22 (3d Cir.1985) (statements made by defendant, relating details of robbery, to police chief after defendant requested that chief arrange a plea bargaining session, not covered by Rule 410 because not made in the course of a discussion with a government attorney); *United States v. Davidson,* 768 F.2d 1266, 1270 (11th Cir.1985) (defendant's statements to DEA agent, after being told by agent that if he cooperated the agent would have United States Attorney recommend a lighter sentence, held admissible because Rule 410 applies only to negotiations with government counsel, and not law enforcement officials); *United States v. Keith,* 764 F.2d 263, 265 (5th Cir.1985) (defendant's admissions to DEA agents in the course of plea bargaining admissible because Rule 410 only makes plea discussions with a government attorney inadmissible); *Rachlin v. United States,* 723 F.2d 1373, 1376 (8th Cir.1983) (defendant's statements to Secret Service agents admissible because the agents had no authority to plea bargain); *United States v. Bernal,* 719 F.2d 1475, 1478 (9th Cir.1983) (defendant's incriminating statements to a federal drug agent after agent requested that defendant give evidence in exchange for leniency, held not to be part of plea negotiations because the agent was not a prosecuting attorney); *United States v. Sikora,* 635 F.2d 1175, 1175–76 (6th Cir.) (held that no plea negotiations took place, even though DEA agent, with authorization from United States Attorney, informed defendant that the government had enough evidence to indict him and he should cooperate), *cert. denied,* 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980); *United States v. Castillo,* 615 F.2d 878, 885 (9th Cir.1980) (conversation with prison counselor in which defendant agreed to "cop" to a manslaughter charge held admissible, since counselor was not a prosecuting attorney); *United States v. White,* 617 F.2d 1131, 1133–34 (5th Cir.1980) (defendant's incriminating statements to federal agent after defendant said he assumed he would get some benefit by cooperating, and the agent replied that he would bring cooperation to attention of prosecutor and sentencing judge, held admissible under the federal rules).

Thus, while the cases do not specifically address the question of whether, under Rule 410, a defendant's comments to a probation officer for his presentence report are admissible in subsequent proceedings, the cases are unambiguous that any statements made by the defendant relating to plea negotiations must be made to the prosecuting attorney himself in order to be protected. Rule 410, therefore, would appear to offer a defendant no automatic protection from self-incriminating statements made to a probation officer concerning counts which are to be dropped as part of a plea agreement, should the plea agreement fall through.

## IV. FIFTH AMENDMENT PRIVILEGE AGAINST SELF–INCRIMINATION

■ Because the federal rules do not explicitly proscribe use in subsequent trials of self-incriminating statements made by a defendant to a probation officer concerning crimes to which he is not pleading guilty, we must ask if there are any constitutional provisions which would bar the solicitation or use of such statements under the circumstances of this case.

*guilty* or which result in a plea of guilty later withdrawn.... (Emphasis added).

It should be noted that Fed.R.Evid. 410 conforms to Fed.R.Crim.P. 11(e)(6).

The fifth amendment states that no person "shall be compelled in any criminal case to be a witness against himself." This amendment has long been interpreted to mean that a defendant may refuse to "answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). *See also McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924) ("The [fifth amendment] privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used."). A witness may thus "rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers ... in any subsequent criminal case in which he is a defendant." *Turley*, 414 U.S. at 78, 94 S.Ct. at 322. *See also Maness v. Meyers*, 419 U.S. 449, 473, 95 S.Ct. 584, 598, 42 L.Ed.2d 574 (1975) (White, J., concurring) (if a witness asserts his fifth amendment privilege he "may not be required to answer a question if there is some rational basis for believing it will incriminate him, at least without at that time being assured that neither it nor its fruit may be used against him"); *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972) (a witness protected by the fifth amendment privilege may rightfully refuse to answer unless he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant).

If, however, a person chooses to answer, it is deemed voluntary because he was free to assert the privilege and would suffer no penalty by so doing. *See Minnesota v. Murphy*, 465 U.S. 420, 429, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984). Thus, if a person "desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment." *United States v. Monia*, 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376 (1943). The key to this general rule, that the privilege must be claimed when self-incrimination is threatened, is that no penalty accompany the assertion of the privilege. If, however, some identifiable factor is held to deny the individual a "free choice to admit, to deny, or to refuse to answer," that is, if the assertion of the privilege is penalized so as to "foreclos[e] a free choice to remain silent, and therefore ... compe[l] ... incriminating testimony," *Garner v. United States*, 424 U.S. 648, 657, 661, 96 S.Ct. 1178, 1186, 1186, 47 L.Ed.2d 370 (1976), then the general rule is no longer applicable. *See also Lisenba v. California*, 314 U.S. 219, 241, 62 S.Ct. 280, 292, 86 L.Ed. 166 (1941). In such situations the incriminating disclosures are considered compelled, despite a failure to claim the privilege. *See Garner*, 424 U.S. at 656–57, 96 S.Ct. at 1183–84.

There are a series of such "penalty" cases, in which the government tried to induce a person to waive his fifth amendment privilege by threatening him with economic or other sanctions. The Supreme Court has repeatedly held that such penalties are unconstitutional. In *Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967), the Court held that in the context of threats of removal from office, a police officer's potentially incriminating responses to questions concerning police corruption were not voluntary and did not constitute an effective waiver of the privilege against self-incrimination, and that "the protection of the individual ... against coerced statements prohibits [their] use in subsequent criminal proceedings." A free choice to remain silent had been foreclosed, and the penalty of discharge had the effect of compelling self-incriminating testimony. In *Garner v. Broderick*, 392 U.S. 273, 278–79, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), the Court concluded that the state had attempted to coerce a waiver of a police officer's fifth amendment privilege on the penalty of loss of employment, and held that he could not be terminated for refusing to waive his constitutional privilege. In *Uniformed Sanitation Men v. Commissioner of Sanitation*, 392 U.S. 280, 284, 88 S.Ct. 1917,

1919, 20 L.Ed.2d 1089 (1968), where public employees were told that their refusal to answer questions and sign waivers of immunity for an official interrogation would lead to their dismissal, it was held that this choice between "surrendering their constitutional rights or their jobs" was impermissible. In *Turley*, 414 U.S. at 82–83, 85, 94 S.Ct. at 324–25, 326, the Court stated, "[a] waiver secured under threat of substantial economic sanction cannot be termed voluntary" and answers elicited upon such threats "are compelled and inadmissible in evidence." Likewise, in *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977), the Court held that "when a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment and cannot be used against the declarant in a subsequent criminal prosecution." And most recently, in *Murphy*, 465 U.S. at 436–37, 104 S.Ct. at 1147–48, where a defendant who was on probation made incriminating admissions about a murder to his probation officer, the Court held that the statements could be used against the defendant in a subsequent prosecution only because the government had *not* threatened the probationer with revocation of his probation to pressure him into giving the incriminating statements, but had merely required the probationer to appear and discuss matters generally. The Court stated that "if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." *Id.* at 435, 104 S.Ct. at 1146.

Thus, the Supreme Court repeatedly has made it quite clear that the government cannot impose penalties because a person elects to exercise his fifth amendment right not to give incriminating testimony against himself. As was summed up in *Cunningham*, 431 U.S. at 806, 97 S.Ct. at 2136, the cases "settle that government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized."

Yet, that is precisely what the government is urging us to do in its interpretation of the Sentencing Guidelines in the instant case. The government maintains that the Guidelines require a defendant to make self-incriminatory statements concerning criminal charges which are to be dismissed as part of a plea agreement. If the defendant does not make such statements, he will suffer the penalty of not receiving a reduction in his offense level, resulting in a longer prison sentence. There are no guarantees given the defendant that such statements will not be used against him in subsequent proceedings. Such a situation is indistinguishable from the cases discussed *supra* in which the Supreme Court has ruled that the imposition of a penalty to compel non-immunized testimony is a violation of the fifth amendment. Clearly, a defendant does not have "a free choice to admit, to deny, or to refuse to answer" if he knows he will be incarcerated for a longer period of time if he does not make the incriminating statements. The touchstone of the fifth amendment is compulsion, and the Supreme Court has recognized that imprisonment is one of a wide variety of penalties which can serve to trigger a constitutional violation. *See Cunningham*, 431 U.S. at 806, 97 S.Ct. at 2136 ("direct economic sanctions and imprisonment are not the only penalties capable of forcing the self-incrimination which the [Fifth] Amendment forbids").

Thus, the interpretation urged upon us by the government would make the acceptance of responsibility section of the Sentencing Guidelines unconstitutional. We conclude, however, that the Guidelines represent a very different mandate from the one currently espoused by the government. Given both the language of the Guidelines and the constitutional restrictions, the acceptance of responsibility section can only be interpreted to mean that a defendant who has made a plea agreement must accept responsibility solely for the counts to which he is pleading guilty.

Moreover, any other interpretation would adversely impact on the plea bargaining process itself. Because of the greater limitations on the use of discretion in the length of sentences imposed under the new Sentencing Guidelines, the two point reduction serves the invaluable function of inducing the defendant to plead guilty. Without such a reduction, there is little incentive for a defendant to plead guilty, as he will receive the same sentence if he pleads guilty as he would if he were to go to trial and is found guilty. As the government itself argued before the district court:

> If when an individual ... pleads guilty under a plea bargain, if he doesn't get that two points for pleading, ... then *no defendant ... is going to plead guilty.* If he can get the exact same sentence under the guidelines by going to trial, then there would be absolutely no reason for him to ever plead guilty. (Emphasis added).

### V. TIMELINESS OF ACCEPTANCE OF RESPONSIBILITY

■ The defendant makes the additional argument that he in fact did accept full responsibility for *all* the counts in the indictment, not just the count to which he pled guilty, during allocution in the sentencing proceedings. The judge, however, did not find these statements satisfactory, presumably because they were made too late.

On the issue of timeliness, we hold that the district court judge has substantial discretion. This conclusion is supported by the Commentary Notes accompanying the Acceptance of Responsibility Section of the Sentencing Guidelines which state that: "1. In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following: ... (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."

The claim that the defendant's acceptance of responsibility during allocution requires the district judge to give the defendant the two point reduction, is not supported by the apparent intent of the draft-

ers. We conclude that while the district court could have granted the reduction to the defendant based on those statements, it was not required to do so, because the statements were made at the very end of the proceedings.

Thus, any reduction in the offense level in the instant case must be based upon the defendant's acceptance of responsibility for Count IV.

### VI. CONCLUSION

■ Given both the language of the Sentencing Guidelines and the many Supreme Court decisions proscribing threats of penalties for the exercise of fifth amendment rights, we hold that a defendant cannot have a reduction in sentence predicated upon his making self-incriminating statements relating to counts to which he has not pled guilty and which are to be dismissed as part of a plea agreement.

It is not clear from the record of the sentencing hearing whether the district court found that defendant's statement to the probation officer constituted an acceptance of responsibility as to Count IV. We, therefore, remand to the district court which shall first determine if defendant accepted responsibility for Count IV. If the court finds that the defendant did, then he shall be entitled to the two point reduction.

The judgment of conviction of the district court is affirmed and the case is remanded to the district court as to the sentencing in accordance with the opinion filed this day.