**Donna SINGER, Plaintiff,**

**v.**

**STATE OF MAINE et al., Defendants.**

**Civ. No. 94–0038–B.**

United States District Court, D. Maine.

Oct. 4, 1994.

20

Joyce A. Oreskovich, Sharon & Oreskovich, Portland, ME, for plaintiff.

Charles A. Harvey Jr., Verrill & Dana, Portland, ME, for defendants.

## ORDER

BRODY, District Judge.

Plaintiff Donna Singer was a Tax Examiner at the State of Maine's Bureau of Taxation ("Bureau"). She was fired in November 1992, less than one year after she filed age and sex discrimination complaints with the Maine Human Rights Commission and the Equal Employment Opportunity Commission. Both Agencies provided her with a Notice of Right to Sue. Plaintiff then filed a complaint in this Court, alleging that she was fired for filing the discrimination claims in violation of the following statutes: 42 U.S.C. §§ 2000e to 2000e–17; 29 U.S.C. §§ 621 to 634; and 5 M.R.S.A. §§ 4551 to 4572.

In addition, Plaintiff asserts two Constitutional violations under 42 U.S.C. § 1983: first, that the process leading up to her termination deprived her of her procedural rights as protected by the Fourteenth Amendment; and second, that her Fifth Amendment right against self-incrimination was violated when she was questioned and then fired by her employers because she would not answer their questions.

Plaintiff names the State of Maine and four of her superiors as Defendants responsible for these alleged actions. The individual Defendants are: John LeFaver, a Tax Assessor; David Campbell, a Personnel Manager; Stephen Murray, Director of the Bureau's Enforcement Division; and Elizabeth Dodge, Acting Director of the Enforcement Division. Plaintiff brings suit against these Defendants both in their official and individual capacities.

Defendants argue that they are entitled to Summary Judgment as a matter of law because there are no genuine issues as to any material facts. In addition, the State of Maine and the individual Defendants claim that they are immune from that portion of this litigation brought under § 1983.

Viewing the facts in a light most favorable to Plaintiff, the Court makes the following findings: At least some of Plaintiff's supervisors knew that she filed discrimination complaints against the Bureau. (Pl.'s Mem. of Law in Supp. of Objection to Defs.' Mot. for Summ.J. at 2.) ("Pl.'s Mem."). One month after her superiors learned of Plaintiff's complaints, she was reprimanded for a repeated pattern of tardiness. (Pl.'s Mem. at 5.) Around the same time, one of the Defendants called Plaintiff a "troublemaker" in a memorandum. (C. Webster Aff. ¶ 5; M. Webster ¶ 3.) In addition, two other Defendants were described as being "out to get" Plaintiff and others who had filed discrimination complaints. (O'Neal Aff. ¶ 7.)

Plaintiff undertook the following actions prior to her dismissal: On August 25, 1992, she ordered a levy against a taxpayer who was having personal problems with one of Plaintiff's coworkers. (Dodge Aff. ¶ 4.) The Bureau, upon discovering Plaintiff's actions, stopped the levy order and took the account away from Plaintiff. (Dodge Aff. ¶ 5.) Plaintiff, however, barely knew the co-worker with whom the taxpayer in question was having personal problems. (Singer Aff. ¶ 6.) Plaintiff also denies any personal involvement with the taxpayer. (Pl.'s Mem. at 10.) In an effort to protect herself, Plaintiff provided her union representative with confidential records as the investigation of her conduct continued. (Dodge Aff. ¶ 11; Cloutier Aff. ¶ 2; Singer Dep. at 139.) In doing so, however, she made an effort to redact revealing or confidential information from those records. (Cloutier Aff. ¶ 2.) While Plaintiff claims that these actions were appropriate and normal, Defendants suggest that they were not and justified her dismissal.

## I. 42 U.S.C. § 1983

### A. The State and Individual Defendants in their Official Capacities (The Immunity Issues)

As Defendants point out, "states and their constituent agencies are not 'persons' who are proper parties defendant under 42 U.S.C. § 1983." (Defs.' Mem. of Law in Supp. of Mot. for Summ.J. at 9) ("Defs.' Mem.") Simply put, state agencies cannot be sued for damages under § 1983. *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir.1991) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989)), *cert. denied*, —— U.S. ——, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992). Defendants argue further that state officials sued in their official capacity are similarly immune from suit. (Defs.' Mem. at 9.) Suits against state officials in their official capacity " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985)). Accordingly, a "state official acting in his official capacity may [not] be sued for damages in a section 1983 action." *Johnson*, 943 F.2d at 108 (noting that state officials may be subject to suit in their *individual* capacity. *See id.*, at 109.) This Court finds therefore, that Plaintiff's cause of action under § 1983 is barred in so far as it is alleged against the State of Maine and the individual Defendants in their *official* capacities.

### B. The Individual Defendants in their Individual Capacities

Plaintiff also alleges § 1983 violations against four of her supervisors in their *individual* capacities. Defendants respond that

these individuals are protected from suit pursuant to the doctrine of qualified immunity.[1]

"When a defendant moves for summary judgment based on the doctrine of qualified immunity, the court must review the facts in the light most favorable to the plaintiff." *Cotnoir v. University of Maine Systems*, 35 F.3d 6, 8 (1st Cir.1994) (citing *Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d 87, 89 (1st Cir.1994)). Viewing the facts in such a light, this Court must determine if "reasonable official[s]" in the Defendants' position "could have believed [their] actions were lawful in light of clearly established law and the information [they] possessed at the time of [their] allegedly unlawful conduct." *Febus–Rodriguez*, 14 F.3d at 91 (citations omitted). Thus,

> the inquiry focuses on the objective reasonableness of a defendant's actions, in light of whether the plaintiff's rights were clearly established, and whether the contours of that right were sufficiently clear such that a reasonable official would have understood that the actions he took violated that right.

*Cotnoir*, 35 F.3d 6, at 10.

Plaintiff alleges two causes of action under 42 U.S.C. § 1983: first, that her procedural rights were violated during the process leading up to her termination; and second, that Defendants abridged her Fifth Amendment right against self-incrimination when they repeatedly questioned her about her conduct on the job and then fired her after she refused to answer their questions.

### 1. Procedural Due Process

■ A protected property interest arises in public employment when the employee reasonably expects that her employment will continue. *Cummings v. South Portland Housing Authority*, 985 F.2d 1, 2 (1st Cir.1993). Plaintiff reasonably possessed such an expectation. The Agreement between the State of Maine and the Maine State Employees Association specified that "[n]o employee shall be disciplined by the State without just cause." (Pl.'s Mem. Ex. 2.) Defendants allege that Plaintiff's dismissal was clearly for just cause. (Defs.' Mem. at 7.) Plaintiff's § 1983 claim, however, is that the process which lead to her dismissal violated her due process rights. The issue, therefore, is whether Defendants reasonably believed that their dismissal of Plaintiff was accompanied by adequate procedural protections.

■ The law in this Circuit requires that, prior to the deprivation of an established property right, "the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir.1990), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). Plaintiff acknowledges that she was forewarned that she might be fired. (Singer Dep. at 111.) In her pleadings, she recounts the various meetings and investigative sessions she had with Defendants. (*See e.g.*, Pl.'s Mem. at 14.) Moreover, the record indicates that Plaintiff was provided with a written letter informing her that she was to be fired. The letter afforded her a final opportunity to meet with her employer, accompanied by a union representative. (Singer Dep. at 147–48.) While Plaintiff did not attend that final meeting, she admits that, at least initially, she had opportunities to explain the reasons for her questioned conduct. (Singer Dep. at 107, 112–13 where she concedes that she provided a full explanation of what she had done and why she had done it.)

Given the record before the Court, it would appear that "reasonable official[s]" in the Defendants' position "could have believed [their] actions were lawful in light of clearly established law and the information [they] possessed at the time of [their] allegedly unlawful conduct." *Febus–Rodriguez*, 14

---

**1.** Although Plaintiff's factual allegations vary with respect to the individual Defendants, the four individuals implicated by Plaintiff's charges have asserted their defense collectively. Accordingly, this decision does not "distinguish among the individual defendants in order to determine to what extent each may or may not have contributed to the alleged harm." *Cotnoir v. University of Maine Systems*, 35 F.3d 6, 10 (1st Cir. 1994) (citing *Domegan v. Fair*, 859 F.2d 1059, 1065 (1st Cir.1988)).

F.3d at 91 (citations omitted).[2] Defendants confronted Plaintiff about her conduct, she responded with her explanation, and she was subsequently fired. This Court therefore finds, that the individual Defendants are protected by the doctrine of qualified immunity with respect to Plaintiff's § 1983 due process claim.

### 2. Self–Incrimination

■ As recounted earlier, Plaintiff confided in and provided her union representative with redacted, albeit confidential, records when she began to fear the course Defendants' investigation was taking. (Dodge Aff. ¶ 11; Cloutier Aff. ¶ 2; Singer Dep. at 139.) According to Plaintiff, the individual Defendants "should have known that it was a violation of plaintiff's constitutional right not to incriminate herself, when plaintiff was pressed to answer questions ... related to divulging confidential information to her union." (Pl.'s Mem. at 14.) It is beyond dispute that Plaintiff was fired in part because of her failure to answer these questions. (Defs.' Reply Br. at 4.) That firing gives rise to Plaintiff's second § 1983 claim.

In *U.S. v. Perez–Franco,* 873 F.2d 455 (1st Cir.1989), the First Circuit Court of Appeals stated that the " 'government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized.' " *Id.* at 463 (quoting *Lefkowitz v. Cunningham,* 431 U.S. 801, 806, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1 (1977)).

The First Circuit in *Perez–Franco* cites *Uniformed Sanitation Men v. Commissioner of Sanitation,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968), as an example of the abridgment of public employees' Fifth Amendment rights by their employer. In *Uniformed Sanitation Men,* "public employees were told that their refusal to answer questions and sign waivers of immunity for an official interrogation would lead to their dismissal." *Perez–Franco,* 873 F.2d at 463. In this case, Plaintiff was terminated following her assertion of the Fifth Amendment in response to Defendants' questions. (Defs.'

Answer at 2 ¶ 5.) Defendants contend that "[i]t was Singer's decision not to attend the hearing or provide an explanation for her actions." (Defs.' Mem. 11.) But in fact, Singer's "decision" was nothing less than a choice between her job and her Fifth Amendment rights. Forcing employees to choose between " 'surrendering their constitutional rights or their jobs' [is] impermissible." *Perez–Franco,* 873 F.2d at 463 (quoting *Uniformed Sanitation Men,* 392 U.S. at 284, 88 S.Ct. at 1919).

What made Plaintiff's "choice" all the more difficult in this case, was that at least one of the Defendants lead her to believe that criminal charges might be brought against her as a consequence of her actions. (Singer Dep. at 109, 114.) In such a context, "reasonable officials" should have been aware that the "choice" facing Plaintiff violated her Constitutional rights. Accordingly, the individual Defendants in this case are not protected by the doctrine of qualified immunity with respect to Plaintiff's Fifth Amendment claim alleged under § 1983.

### II. Retaliatory Discharge

Plaintiff also alleges that her firing was in retaliation for her filing sex and age discrimination complaints against her employers. With respect to this claim, Plaintiff requests relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17; the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634; and the Maine Human Rights Act, 5 M.R.S.A. §§ 4551 to 4572.

### A. Title VII

Summary judgment in all cases is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). " 'The moving party is entitled to judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v.*

---

**2.** It is important to note that Plaintiff's § 1983 claim in this instance is about the process that was afforded her. While her termination may or may not have been proper, the process which lead to that termination was not unconstitutional.

*Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ To allege successfully a retaliatory discharge claim under Title VII, Plaintiff must show that "(1) she engaged in a protected activity as an employee, (2) she was subsequently discharged from employment, and (3) there was a causal connection between the protected activity and the discharge." *Hoeppner v. Crotched Mountain Rehabilitation Center, Inc.,* 31 F.3d 9, 14 (1st Cir.1994) (citing *Ramos v. Roche Products, Inc.,* 936 F.2d 43, 48 (1st Cir.), *cert. denied,* 502 U.S. 941, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991); *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 321 (7th Cir.1992)). Plaintiff has met the first two prongs of the above test: Her filing of a discrimination complaint was protected employee activity and her discharge came subsequent to that filing. To avoid summary judgment, however, she must still "make a sufficient showing on [the] essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. In this case, that "essential element" is the "causal connection" required by *Hoeppner.*

■ To prevail, with respect to the causal prong, Plaintiff "must 'point to specific facts detailed in affidavits and depositions— that is, names, dates, incidents, and supporting testimony—giving rise to an inference of discriminatory animus.'" *Id.* 31 F.3d at 14 (quoting *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 895 (1st Cir.1988)). It is not sufficient to proffer accusations which "'remain largely conclusory and lacking in the concrete documentation necessary to prove the causal link between her protected activity and her retaliatory treatment.'" *Id.* 31 F.3d at 15 (quoting *Ramos,* 936 F.2d at 49).

Plaintiff points to various evidence which, she argues, show that Defendants' actions were retaliatory. First, Plaintiff alleges that she "was questioned about and disciplined for tardiness related to a long-standing disability." (Compl. ¶ 13.) While Plaintiff acknowledges that she was frequently late to work, she claims that her employer's response was "not reasonable because plaintiff's medical condition had caused her to be tardy many times in the previous several years without any repercussions whatsoever from her employer." (Pl's. Statement of Material Facts ¶ 1.) In addition, Plaintiff alleges that, while other employees were late on a regular basis, she was singled out because she filed the discrimination complaints. (Singer Dep. at 59.)

Plaintiff, however, did not sufficiently show that the supervisor who questioned her, Frank Hiscock, had any knowledge of Plaintiff's discrimination complaints or her medical condition. Hiscock flatly denies having such knowledge when he documented her frequent late arrivals. (Hiscock Aff. ¶ 4.) Furthermore, no other disciplinary action was taken with respect to Plaintiff's tardiness. Even if Hiscock did know that Plaintiff had complained of sex and age discrimination, this Court is not persuaded that the questioning of her tardiness gives "rise to an inference of discriminatory animus." *Hoeppner,* 31 F.3d at 14.

Other evidence cited by Plaintiff is more suggestive of a retaliatory motive. At least two affidavits submitted by Plaintiff state that David Campbell—one of the Defendants, and a Personnel Director at the Bureau at the time in question—identified Plaintiff as "a troublemaker" in a memorandum. (C. Webster Aff. ¶ 5; M. Webster ¶ 3.) Defendants contend that "there is no evidence that the memorandum was connected to" Plaintiff's filing of discrimination complaints. (Defs.' Reply Br. at 2.)[3]

Plaintiff, however, also introduced evidence that Stephen Murray and Elizabeth Dodge, two of the Defendants, were "out to get ... the women who had filed a sex discrimination complaint, including ... Donna Singer." (O'Neal Aff. ¶ 7.) In addition, Defendant

---

3. The Court notes that Defendants initially denied the existence of this memorandum. (Defs.' Mem at 6–7.) Once Plaintiff's affidavits verified its existence, Defendants then argued that the memorandum was unrelated to Plaintiff's earlier discrimination complaints. It is noteworthy, therefore, that Defendants offer no evidence that Plaintiff was labelled a "troublemaker" for any reason other than that advanced by Plaintiff.

Dodge was responsible for part of the investigation into Plaintiff's allegedly improper conduct. (Defs.' Answer to Pl.'s Interrog. # 11.) The Court is satisfied therefore, that Plaintiff's affidavits, when taken together, sufficiently "point to specific facts . . . [which give] rise to an inference of discriminatory animus." *Hoeppner,* 31 F.3d at 14.

Despite this evidence, Defendants maintain that Plaintiff's firing was justified because her actions were "motivated by considerations other than legitimate tax collection business." (Defs.' Mem. at 7.)

> [She] inserted notes into the Bureau computerized case management system [ ] that her supervisors fairly inferred to have been motivated by considerations other than legitimate tax collection business; . . . took the improper action of ordering a levy demand to be issued [against an individual taxpayer], the first step in authorizing the state to impose . . . final collection action; . . . provided the union representative with what appeared to be confidential tax records; . . . [refused] to answer [her employers'] questions . . . [or] attend a hearing at which she was given another opportunity to explain her actions.

(Defs.' Mem. at 7–8.)

Plaintiff responds that the asserted reasons behind her firing were in fact pretextual and served to mask the retaliatory motive which guided Defendants' action. In support of her argument, Plaintiff submits at least two affidavits which indicate that her questioned conduct was in fact normal. One of her coworkers asserts that Plaintiff "did not do anything wrong," and that "there was nothing unusual or inappropriate about the message Donna Singer placed on her computer on August 25, 1992 concerning a taxpayer . . . This account was overdue for a levy demand." (Weeks Aff. ¶¶ 5, 3–4.) Another of Plaintiff's coworkers asserts: "There was nothing unusual or out of the ordinary about what Donna Singer did . . . concerning issuing a levy demand to that particular taxpayer under those circumstances . . . My first action would have been to send a levy demand on that account, had I reviewed it on that day." (Cloutier Aff. ¶ 4.) Plaintiff notes in addition that, subsequent to her termi-nation, she was reinstated to her job by a state labor contract arbitration. The record does not reflect the intricacies of that decision but this much is clear—while she was reprimanded by the arbitration decision, her job was nonetheless returned to her. (*See* Defs.' Mem. at 9 n. 1; Pl.'s Mem. at 12.)

The First Circuit has stated that "refuting the employer's articulated reasons . . . does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent." *Hoeppner,* 31 F.3d at 17 (citing *Ramos,* 936 F.2d at 48); *Braverman v. Penobscot Shoe Co.,* 859 F.Supp. 596, 598 (D.Me.1994). In this case, however, Plaintiff does more than simply refute Defendants' articulated reasons for her dismissal. In addition to calling her employers' justifications into question, Plaintiff has advanced evidence that she was labelled a "troublemaker," and that some of her supervisors were "out to get her" for filing discrimination claims. Faced with such a record, *this Court denies Defendants' Motion for Summary Judgment.* Plaintiff has sufficiently pointed "to specific facts detailed in affidavits . . .—that is, names, dates, incidents, and supporting testimony—giving rise to an inference of discriminatory animus." *Hoeppner,* 31 F.3d at 14 (citation omitted).

## B. Age Discrimination in Employment Act

 While Plaintiff alleged a separate retaliatory discharge claim under the Age Discrimination in Employment Act, the Court's analysis is the same as that pursued under her Title VII claim. In fact, the test under Title VII and *Hoeppner* is virtually identical to that utilized in federal cases interpreting retaliatory claims under 29 U.S.C. § 623(d) of the Age Discrimination in Employment Act. *See e.g., Zebedeo v. Martin E. Segal Co., Inc.,* 582 F.Supp. 1394, 1418 (D.Conn. 1984) (requiring the Plaintiff to show "protected participation or opposition under [the ADEA] known by the alleged retaliator; . . . an employment action . . . disadvantaging [plaintiff;] and . . . a causal connection between the first two elements.") (quoting *Grant v. Bethlehem Steel,* 622 F.2d 43, 46 (2d Cir.1980)). Accordingly, this Court finds that Defendants' Motion for Summary Judg-

ment should also be denied with respect to Plaintiff's retaliatory discharge claim brought under the Age Discrimination in Employment Act.

### C. Maine Human Rights Act

 Similarly, while Plaintiff has alleged a third retaliatory discharge claim under Maine law, the analysis is unchanged. The Maine legislature "intended the courts to look to the federal case law to 'provide significant guidance in the construction of'" the Maine Human Rights Act. *Percy v. Allen,* 449 A.2d 337, 342 (Me.1982) (citation omitted). In applying federal case law to cases arising under the Maine Act, courts have often followed the rubric developed in Title VII cases. *See e.g., Bowen v. Department of Human Services,* 606 A.2d 1051 (Me.1992) (applying Title VII federal case law to a claim brought under the Maine Human Rights Act and Title VII). Therefore, this Court also denies Defendants' Motion for Summary Judgment with respect to Plaintiff's retaliatory discharge claim brought under the Maine Human Rights act.

### III. Disposition

This Court grants in part and denies in part Defendants' Motion for Summary Judgment with respect to Count IV. The State of Maine and the individual Defendants, sued in their official capacities, are immune from Plaintiff's claims under 42 U.S.C. § 1983. In addition, the individual Defendants sued in their individual capacities are protected by qualified immunity with respect to Plaintiff's Fourteenth Amendment § 1983 claim. These same defendants, however, do not possess qualified immunity with respect to Plaintiff' Fifth Amendment § 1983 claim. Finally, Defendants' Motion for Summary Judgment is denied with respect to each of Plaintiff's statutory retaliatory discharge claims.

*SO ORDERED.*