USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1887 UNITED STATES OF AMERICA, Appellee, v. JOS ANTONIO NU EZ-RODRIGUEZ, Defendant, Appellant.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. H ctor M. Laffitte, U.S. District Judge] ___________________  ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ Rafael F. Castro Lang for appellant. _____________________ Rosa Emilia Rodr guez-V lez, Executive Assistant United States ____________________________ Attorney, with whom Guillermo Gil, United States Attorney, Jos A. ______________ _______ Quiles-Espinosa, Senior Litigation Counsel, and Nelson Jos P rez- _______________ ___________________ Sosa, Assistant United States Attorney, were on brief for appellee. ____  ____________________ August 14, 1996  ____________________ CYR, Circuit Judge. Appellant Jos Antonio Nu ez- CYR, Circuit Judge. ______________ Rodriguez ("Nu ez") challenges the life sentence imposed upon him for "carjacking", see 18 U.S.C. 2119(3), and the consecutive ___ five-year sentence imposed for using a firearm in relation to a crime of violence, see id. 924(c)(1), 2. We vacate the ___ ___ district court judgment and remand for further proceedings.  I I BACKGROUND BACKGROUND __________ At an apartment in Santurce, Puerto Rico, on the evening of June 7, 1994, Nu ez and four other persons laid plans to free two prisoners from the Bayamon Regional Jail. The conspirators agreed to search out a vehicle bearing government license plates to facilitate the planned entry upon the jail premises. During their meeting, Nu ez saw an associate accept delivery of a handgun. Later the same evening, after driving around San Juan for several hours, Nu ez and two associates spotted Jos Jaime Pierluisi-Urrutia ("Pierluisi"), brother of the Secretary of Justice of the Commonwealth of Puerto Rico, as he returned home around midnight in a car with government plates. After parking their own car, Nu ez and an associate ap- proached the unsuspecting Pierluisi as he began unloading the trunk. The associate brandished a handgun and demanded the car keys. After relinquishing the keys without protest, Pierluisi was summarily murdered by the associate with a shot to the back of his head as Nu ez prepared to drive away in the Pierluisi 2 vehicle. Following the murder, Nu ez drove the Pierluisi vehicle to the housing development where he lived.  The next day, after learning that the FBI had been inquiring as to his whereabouts, Nu ez presented himself for questioning. Although he readily admitted his involvement in the carjacking, he steadfastly maintained that he had been abducted, threatened with a gun, and forced to participate. During a subsequent consensual search of the apartment where he lived, FBI agents seized a briefcase and passport, as well as clothing and credit cards, belonging to the victim.  After Nu ez was indicted, he offered to cooperate with the government provided he received total immunity from prosecu- tion. More than seven months after his confession, and less than a week prior to the scheduled trial, Nu ez finally pled guilty to the charges without the benefit of a plea agreement. Subse- quently he filed a pro se motion to set aside his guilty pleas, ___ __ which he withdrew following the appointment of new counsel. The district court ultimately sentenced Nu ez to life imprisonment plus sixty months, after refusing downward adjustments for acceptance of responsibility and "minor participation," and rejecting a downward departure request based on "reduced mental capacity."  II II DISCUSSION DISCUSSION __________ 3 A. "Acceptance of Responsibility" (U.S.S.G. 3E1.1)1 A. "Acceptance of Responsibility" (U.S.S.G. 3E1.1)1 _______________________________________________ Nu ez first contends that the district court committed reversible error in refusing to adopt a presentence report ("PSR") recommendation that he receive a three-point reduction for acceptance of responsibility under U.S.S.G. 3E1.1.2  Nu ez maintains that he met his burden of proof under  ____________________ 1Nunez was sentenced under the November 1994 guidelines, wherein 3E1.1 provided: (a) If the defendant clearly demonstrates accep- tance of responsibility for his offense, decrease the offense level by 2 levels. (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps: (1) timely providing complete information to the government concerning his own involvement in the offense; or (2) timely notifying authorities of his in- tention to enter a plea of guilty, thereby permit- ting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level. U.S.S.G. 3E1.1 (Nov. 1994). 2The claimed entitlement to a three-point downward adjust- _____ ment for acceptance of responsibility under U.S.S.G. 3E1.1(b) is frivolous, since the undisputed evidence unmistakably dis- closed that Nu ez provided neither "timely" nor "complete" information to the government concerning his own involvement in the offense. U.S.S.G. 3E1.1(b)(1). Nor did Nu ez provide "timely" notice to "authorities of his intention to enter a plea of guilty, [so as to] permit[] the government to avoid preparing for trial . . .," id. 3E1.1(b)(2). We therefore limit our __ discussion to the 3E1.1(a) claim. 4 U.S.S.G. 3E1.1, see United States v. Gonzalez, 12 F.3d 298, 300 ___ _____________ ________ (1st Cir. 1993), since all the competent evidence in the PSR was "consistent" with his acceptance of responsibility: he volun- tarily surrendered soon after the crime, see U.S.S.G. 3E1.1, ___ comment. (n.1(d)) (Nov. 1994), assisted investigators in recover- ing the victim's personal possessions, see id. (n.1(e)), cooper- ___ ___ ated with the FBI and entered a "straight" plea (i.e., without exacting a plea bargain), see United States v. Vance, 62 F.3d ___ _____________ _____ 1152, 1160 (9th Cir. 1995), and expressed sincere remorse at the change-of-plea hearing and at sentencing (e.g., crying in court, and stating that he was "sorry" for the victim's family). Nu ez further contends that the district court erred by relying on other factors it deemed "inconsistent" with acceptance of respon- sibility, including Nu ez' continuing and willful failure to disclose the names of some of his accomplices.3 This factor, Nu ez maintains, can be relevant only to a defendant's entitle- ____ ment to a 5K1.1 downward departure for "substantial assistance to [law enforcement] authorities." See U.S.S.G. 5K1.1.4 ___ 1. The District Court Sentencing Decision 1. The District Court Sentencing Decision ______________________________________ In denying Nu ez a downward adjustment under 3E1.1, the district court apparently relied on two grounds. First, Nu ez delayed his guilty plea for six months, until five days ____ ____  ____________________ 3Nunez did provide the first names of two accomplices. 4Because a two-point offense-level reduction under 3E1.- 1(b) would have lowered Nu ez' total offense level from 43, CHC I (life imprisonment), to 41, CHC I (324-405 months), see supra ___ _____ note 2, any error could not be considered harmless.  5 before the scheduled trial, thereby presumably leaving the government no alternative but to prepare for trial. See U.S.S.G. ___ 3E1.1, comment. (n.1(g)) (court considers timeliness of defend- ant's manifestation of acceptance of responsibility) (Nov. 1994). Second, the court noted that during the six-month delay, Nu ez had offered inconsistent versions of the relevant events.5 See ___ id. comment. (n.1(a)) (court considers whether defendant "truth- ___ fully admitt[ed] the offense comprising the offense of convic- tion."). Since a guilty plea does not entitle a defendant to a downward adjustment under 3E1.1, see id. comment (n.3) (guilty ___ ___ plea and "truthful admission" are "significant evidence" of acceptance of responsibility but "may be outweighed by [inconsis- tent] conduct of the defendant . . ."), normally a trial court's decision to deny a 3E1.1 adjustment would be affirmed on these grounds. Id. comment. (n. 5) ("The sentencing judge is in a ___ unique position to evaluate a defendant's acceptance of responsi- bility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). The district court made other statements during the sentencing hearing, however, which are reasonably understood to indicate that the court declined a 3E1.1 adjustment on an inde- pendent ground; that is, Nu ez' purported inability or ongoing  ____________________ 5Initially, Nunez told the FBI that he had been abducted by an unidentified male, forced at gunpoint to drive to the victim's residence, then forced to drive the Pierluisi vehicle from the murder scene. Later, Nunez told the FBI that while visiting at a friend's apartment, he had encountered a group of persons who persuaded him to assist in the prison break scheme.  6 refusal to disclose the names of other collaborators. As the precise import of the district court's statements in this regard is critical, we recite its statements at length.  After describing, as incredible, Nu ez' initial story that he had been abducted by armed strangers, see supra p. 3, the ___ _____ district court observed:  A defendant who accepts responsibility must do more than that when he's involved in a conspiracy and where [] human life is in- volved. He must come forward and identify and help authorities get the other people. He has stated time and time again that he doesn't know these other people. Now, he spent with these people some hours in an apartment, planning a crime. He drives around . . . cruising in the rear seat while he is telling the public and the Court that he was forced . . . to sit on the front seat with the gun pointed at him. When he stepped out of the car, the other . . . un- identified male got out of the car with a gun. Now, we don't know whether [Nu ez] was wearing [or] carrying the gun, or the other people [were], . . . because the track record of this defendant is that he cannot be be- lieved. And therefore for those reasons I'm not _____ accepting the two-points downward adjustment for acceptance of responsibility. I don't think the defendant has done that. When he comes forward and identifies the other peo- ple, if he does that, then that might be a _____ __ different story. But he's protecting others and that's why he has done all these things. Tr. at 39-40 (emphasis added). Later, once again after discuss- ing Nu ez' inconsistent versions of the relevant events on June 7, 1994, the district court observed:  [In his second version,] Nunez rode in the rear seat. So there was no one pointing a gun at him. And for four hours, if he tells 7 the court and the authorities that he hasn't he cannot recognize those two at least those other two individuals, I'm not going to buy that. . . . Nunez turned several items [of the victim's property] over to those who he had originally met at the apartment. Again, how could he say that he cannot iden- tify those people? He is protecting them. And I know it. I'm pointing to the defen- dant. Tr. at 43-44. Nu ez responded: "I'm afraid." The court did not respond.  Later, in summarizing its guidelines sentencing calcu- lations, the district court added: The defendant has not identified although the court finds that he can the other individuals who participated in the crime. These are considered to have been elements of a strategy to manipulate the judicial pro- ceedings, among other things, towards estab- lishing a tailor-made plea agreement condi- tioned on his own terms, failing to yield to this sort of bargain, and this occurred at the beginning where the defendant said I'll plead guilty if I get "X" type of sentence . . . . A defendant qualifies for a [ 3E1.1] reduction when he truthfully admits the con- duct comprising the offense of conviction and does not falsely deny or frivolously contest relevant conduct that the Court has deter- mined to be true and also does not keep to himself the identity of other coconspirators. Tr. at 46-47. After defense counsel objected to its consider- ation of the "informer" criterion, the district court responded: [M]y point is that if anyone commits a crime __ ______ with one or more persons, knowing those per- sons, does not come forward to the authori- ____ ___ ____ _______ ties, giving the names of those persons, then ______ ___ _____ __ _____ _______ you cannot have a full acceptance of respon- ___ ______ ____ _ ____ __________ __ _______ sibility because that entails precisely a ca- ________ tharsis, a full remorse by disclosing the whole thing, being truthful and not conceal- ing any information how to identify . . . these defendants. I have to say that for 8 defendant's benefit that there is a section 5K in this statute. There's a Rule 35. You have one year to think about it . . . and to cooperate with the authorities. But I'm not saying that if you do that I will reconsider, but your counsel knows better than I that  . . . what I mean. . . . All I'm all I'm saying, counsel I want to make the record clear is that there is what is called a downward departure. I ruled that there is no departure, either upward or downward, right? . . . Very well. And I am saying that there is what is called a downward departure, and that's up to the defendant to avail of that of himself, punto, without anything else. . . . I'm not saying he is getting life because of that. I'm saying that there is that pro- vision in the statute and Rule 35. Tr. at 53-55 (emphasis added). Nu ez characterizes the latter explanation for refusing a 3E1.1 adjustment as an error of law, in that the district court relied upon an eligibility criterion relevant exclusively to 5K1.1 departures for "substantial assistance to [law en- forcement] authorities," see U.S.S.G. 5K1.1.6 See, e.g., ___ ___ ____ United States v. McKinney, 15 F.3d 849, 854 (9th Cir. 1994) (  _____________ ________ 3E1.1(a) "focuses on the defendant's sincere remorse for his own conduct, not his assistance in incriminating others"; a "defen- dant's degree of assistance in the prosecution of a codefendant is relevant only to his entitlement for a departure for substan- tial assistance under 5K1.1"); see also Vance, 62 F.3d at 1157- ___ ____ _____ 58; United States v. Leonard, 50 F.3d 1152, 1158-59 (2d Cir. _____________ _______  ____________________ 6U.S.S.G. 5K1.1 reads, in part: "Upon motion by the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person __ _______ ______ who has committed an offense, the court may depart from the guidelines." (Emphasis added.) 9 1995). 10 2. Standard of Review 2. Standard of Review __________________ Sentencing Guideline interpretations are reviewed de __ novo, see United States v. Bennett, 60 F.3d 902, 904 (1st Cir. ____ ___ ______________ _______ 1995), whereas the subsidiary findings of fact, including the ultimate determination as to whether the defendant sincerely "accepted responsibility" for the charged offense and relevant conduct, are reviewed only for clear error, see United States v. ___ _____________ Crass, 50 F.3d 81, 83 (1st Cir. 1995).7  _____ Even if we were to determine that the sentencing court committed error, however, its sentence would not be set aside unless it affected defendant's substantial rights. See Fed. R. ___ Crim. P. 52(a); see also Williams v. United States, 503 U.S. 193, ___ ____ ________ _____________ 202-03 (1992); United States v. Curran, 926 F.2d 59, 62 (1st Cir. _____________ ______ 1991). A sentencing decision based in part on an invalid ground may be affirmed if "excision of the improper ground does not obscure or defeat the reasoning of the district court," and we are "left, on the record as a whole, with the definite and firm conviction that removal of the inappropriate ground would not be likely to alter the district court's view of the sentence right- fully to be imposed." United States v. Diaz-Bastardo, 929 F.2d _____________ _____________ 798, 800 (1st Cir. 1991) (departure decision); see also United ___ ____ ______ States v. Diaz, 39 F.3d 568, 571 (5th Cir. 1994) (same analysis, ______ ____ reviewing denial of 3E1.1 reduction based on improper factor).  ____________________ 7Nu ez preserved this issue by lodging a contemporaneous objection at sentencing.  11 3. The "Informer" Criterion and Section 3E1.1 3. The "Informer" Criterion and Section 3E1.1 __________________________________________ The question whether U.S.S.G. 3E1.1 permits the "informer" criterion to be considered in determining "acceptance of responsibility" is unsettled at best. Compare McKinney, 15 _______ ________ F.3d at 854 (holding that "informer" criterion is "relevant only" to 5K1.1 departure) with United States v. Apple, 915 F.2d 899, ____ _____________ _____ 913 n.23 (4th Cir. 1990) (upholding use of "informer" criterion under pre-November 1989 guidelines, but skirting question whether subsequent 3E1.1 amendments foreclose it) with United States v. ____ _____________ Cross, 900 F.2d 66, 70 n. 1 (6th Cir. 1990) (expressing "uncer- _____ tainty") (dictum) with United States v. Tellez, 882 F.2d 141, 143 ____ _____________ ______ (5th Cir. 1989) (upholding denial of adjustment for acceptance of responsibility for defendant who "never identified the person or persons who had hired him to smuggle the contraband into the United States").  Turning first to the specific guideline language itself, see United States v. Perez-Franco, 873 F.2d 455, 458 (1st ___ _____________ ____________ Cir. 1989), we find no explicit indication that the Sentencing Commission intended to preclude consideration of the "informer" criterion in appropriate circumstances. Moreover, the U.S.S.G.  3E1.1 commentary expressly provides that its listing of relevant considerations for a two-point adjustment under subsection (a) is nonexhaustive. See U.S.S.G. 3E1.1, comment. (n.1(a)-(g)) ___ ("include, but are not limited to, the following . . . .").8  ____________________ 8These indicia are: "(a) voluntary termination or withdrawal from criminal conduct or associations; (b) voluntary payment of restitution prior to adjudication of guilt; (c) voluntary and 12 Thus, the absence of an explicit reference, in section 3E1.1 itself, to "voluntary assistance to authorities in implicating other criminal participants" is not conclusive.  Although the McKinney court noted that section 3E1.1 in ________ general, and the nonexhaustive listing in its commentary in particular, focus solely on the defendant's disclosures relating ______ to his own criminal conduct, that is, his "personal responsibili- ________ ty," see McKinney, 15 F.3d at 854 (citing U.S.S.G. 3E1.1) ___ ________ (emphasis added), personal responsibility may be manifested in various ways and the acceptance-of-responsibility determination under section 3E1.1 necessarily envisions a fact-specific inquiry in each case, see United States v. Talladino, 38 F.3d 1255, 1258 ___ _____________ _________ (1st Cir. 1994). Moreover, by prescribing a nonexhaustive listing in its commentary, the Sentencing Commission left sen- tencing courts the latitude to consider all reliable, probative indicia tending to demonstrate, or countervail, the genuineness of the particular defendant's remorse. We can discern no sound basis for a general rule barring a defendant's voluntary cooperation in truthfully identifying criminal associates from consideration by the sentencing court in determining the genuine- ness of the defendant's remorse. Rather, unless otherwise fore-  ____________________ truthful admission to authorities of involvement in the offense and related conduct; (d) voluntary surrender to authorities promptly after commission of the offense; (e) voluntary assis- tance to authorities in the recovery of the fruits and instrumen- talities of the offense; (f) voluntary resignation from the office or position held during the commission of the offense; and (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." 13 closed by the Sentencing Guidelines, but see infra, we think a ___ ___ _____ defendant's refusal to provide such cooperation may be weighed, along with all other relevant evidence, in determining "accep- tance of responsibility" under U.S.S.G. 3E1.1. Nor do we think this basic premise is rendered unsound by the concern that "[a] cunning but not contrite defendant may buy his way out of trouble by providing evidence against someone else, and an entirely contrite defendant may out of fear, ignorance of information useful to the prosecutors, or other reason, fail to provide assistance." Vance, 62 F.3d at 1157. To be sure, such "inform- _____ ing" will not always prove a reliable or bona fide indicium of ____ ____ the defendant's remorse. Be that as it may, however, similar credibility determinations and inferential findings are consigned routinely to sentencing courts, and, without more, present no sound basis for a per se rule barring the "informer" criterion ___ __ from consideration under section 3E1.1, as one more among the totality of the circumstances that the sentencing court considers in assessing a defendant's true motives for "informing" (e.g., sentence manipulation), or not "informing" (e.g., lack of re- morse, inability to inform, desire to protect accomplices for personal or illicit reasons, or genuine fear of retaliation).  Nu ez suggests, however, that the narrowly focused language in U.S.S.G. 3E1.1(b) (three-point reduction for acceptance of responsibility) requiring, inter alia, that the _____ ____ defendant "timely provid[e] complete information to the govern- ment concerning his own involvement in the offense," see supra ___ ___ ___________ ___ _____ 14 note 1, necessarily forecloses consideration of the "informer" criterion under section 3E1.1. We do not agree. Subsection (b) requires that a defendant first meet the relevant criteria _____ prescribed in subsection (a), and since the "informer" criterion is not barred by the nonexhaustive listing included in the Commission commentary to subsection (a), see U.S.S.G. 3E1.1, ___ comment. (n.1(a)-(g)), it may be weighed in the balance under the threshold subsection (a) inquiry. Nothing in subsection 3E1.1(b) purports to supplant the requirements of subsection (a). In- stead, the subsection (a) requirements are explicitly made independent. Thus, there is no sound basis for the view that the imposition of additional requirements in subsection (b) alters the threshold factors appropriate for consideration under subsec- tion (a). A defendant must satisfy either subsection (b)(1) or (b)(2), as well as subsection (a), in order to qualify for the extra-point adjustment permitted under 3B1.1(b).  Section 5K1.1 likewise focuses on the "informer" criterion, even to the exclusion of other criteria, and imposes additional conditions precedent to sentence mitigation such as the requirement that a defendant's cooperation in identifying accomplices be sufficiently comprehensive to constitute "substan- tial assistance" as certified by a government motion recommending a downward departure. Commentary to U.S.S.G. 5K1.1 provides that [t]he sentencing reduction for assistance to authorities shall be considered independently _____________ of any reduction for acceptance of responsi- bility. Substantial assistance is directed 15 to the investigation and prosecution of crim- inal activities by persons other than the defendant, while acceptance of responsibility is directed to the defendant's affirmative recognition of responsibility for his own conduct. U.S.S.G. 5K1.1, comment. (n.2) (emphasis added).  At first blush this commentary may seem to support Nu ez' contention, but it is far from conclusive. At most it indicates simply that the sentencing court is to undertake sequential inquiries under sections 3E1.1 and 5K1.1, since the __________ two independent standards require the court to balance and weigh different criteria. Unlike section 5K1.1, moreover, section 3E1.1 requires the sentencing court to balance many divergent ____ factors, consistent and inconsistent with acceptance of responsi- bility. Nothing in application note 2 to section 5K1.1 suggests, however, that these sequential inquiries may not involve overlap- ping criteria, in particular the "informer" criterion. See ___ United States v. Singh, 923 F.2d 1039, 1044 (3d Cir.) ( 3E1.1 ______________ _____ and 5K1.1 are to be assessed "independently," but involve "relat- ed concepts"), cert. denied, 500 U.S. 937 (1991).  _____ ______ Since reason and common sense suggest that a particular criterion may bear relevance to the inquiries required in assess- ing a sentencing factor under more than one guideline, and no sentencing guideline indicates otherwise, we are unable to credit Nu ez' contention that the "informer" criterion may not be considered under section 3E1.1. Compare U.S.S.G. 3C1.1 (upward _______ offense-level adjustment for obstruction of justice) with  ____ 3E1.1, comment. (n.4) ("Conduct resulting in an enhancement under 16 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both 3C1.1 and 3E1.1 may apply."). For example, assistance in identifying, apprehending, or prosecuting accomplices might buttress a cooperating defendant's statements of remorse under section 3E1.1, without regard to whether the government considers the cooperation sufficiently helpful to warrant a "substantial assistance" departure under section 5K1.1. Finally, section 5K1.2 provides that "[a] defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." The October 1988 version of U.S.S.G. 5K1.2 included a single commentary: "The Commission . . . rejected the use of a defendant's refusal to assist authorities as an aggravating sentencing factor. Refusal to assist authorities based upon continued involvement in criminal activities and association with accomplices may be considered, however, in evaluating a defendan- t's sincerity in claiming acceptance of responsibility." The Sentencing Commission deleted this commentary in November 1989, explaining that it intended "to delete the unnecessary commentary ___________ containing an unclear example." U.S.S.G. App. C, amend. 292, at _______ 178 (November 1995) (emphasis added).  The current version of section 5K1.2 does not preclude the "informer" criterion under section 3E1.1. First, given its location in the guidelines section dealing with "departures," 17 section 5K1.2 clearly forbids reliance on a defendant's failure to identify accomplices as a basis for an upward departure. But _________ it neither expressly nor impliedly forbids such reliance for purposes of sentencing adjustments such as section 3E1.1. In all ___________ events, since any adjustment under section 3E1.1 can only be downward, the "informer" criterion under section 3E1.1 can never ________ constitute an aggravating sentencing factor, only a mitigating factor. See, e.g., United States v. Gordon, 895 F.2d 932, 936-37 ___ ____ _____________ ______ (4th Cir.) ( 3E1.1 reduction bespeaks "mitigation," not aggrava- tion), cert. denied, 498 U.S. 846 (1990).  _____ ______ Notwithstanding the November 1989 amendment, it remains clear that the commentary to section 5K1.2 contemplated that sentencing courts were to consider the "informer" criterion under section 3E1.1 in appropriate circumstances. Significantly, the 1988 version purported to allow the court to deny a section 3E1.1 adjustment where the defendant did not identify accomplices because his criminal associations were ongoing. Further, it seems that the 1989 amendment deleted the "unclear" commentary not because the Commission had altered its view on the propriety of the section 3E1.1 practice described in the commentary, but because it concluded that the current text in sections 3E1.1 and 5K1.1 was sufficiently clear to support such a sentencing prac- tice without further elaboration. We therefore conclude that the 1989 amendment was meant to clarify, not to effect a substan- tive change in sentencing policy. See United States v. Campbell, ___ _____________ ________ 61 F.3d 976, 985 (1st Cir. 1995) (court should presume that 18 Commission did not intend substantive change where guideline amendments are unaccompanied by language declaring intention to abandon earlier sentencing practice), cert. denied, 116 S. Ct. _____ ______ 1556 (1996). This conclusion is confirmed by the Commission's failure to effect a conforming 1989 modification to the non- exhaustive listing in section 3E1.1. See supra note 8. ___ _____ Insofar as McKinney, Vance, and Leonard might be ________ _____ _______ thought to suggest a per se rule, but see McKinney, 15 F.3d at ___ __ ___ ___ ________ 854 ("Where the defendant's refusal to assist authorities in the prosecution of his codefendants does not detract from his clear contrition for his own actions, he is still entitled to the acceptance of responsibility reduction."), we must respectfully disagree. In appropriate circumstances a sentencing court is permitted to consider, as relevant evidence of the defendant's sincerity in accepting responsibility for his own crimes, at least whether a defendant truthfully has identified accomplices in the crimes to which the defendant has pled guilty. For example, where a defendant does not disclose accomplices because he has elected to continue his criminal associations, the sen- tencing court may consider such conduct along with any other indicia of failure to accept responsibility. On the other hand, should the court determine that a defendant has not identified his accomplices because he genuinely fears retaliation, but that the defendant's conduct otherwise demonstrates genuine remorse, a downward adjustment under section 3E1.1 might yet be found appro- priate, as the sentencing court's balancing and weighing of the 19 relevant criteria under section 3E1.1 is entitled to great defer- ence on appeal. U.S.S.G. 3E1.1, comment. (n.5). 4. The "Acceptance of Responsibility" Finding  4. The "Acceptance of Responsibility" Finding __________________________________________ The district court apparently relied on two proper grounds for its finding that Nu ez had not demonstrated accep- tance of responsibility: (i) the six-month delay in entering a guilty plea, see U.S.S.G. 3E1.1, comment. (n.1(g)) (timeliness ___ factor), and (ii) the inconsistent stories given by Nu ez, see ___ id. (n.1(a)) (truthful-admission factor).  ___ In addition, the district court discussed at consider- able length Nu ez' failure to assist the FBI in identifying his accomplices. See supra Section II.A.1. The court appropriately ___ _____ questioned Nu ez' motives for not disclosing the identities of his associates. Its misgivings were prompted by Nu ez' inconsis- tent versions of the carjacking, and were explicitly connected to its finding that Nu ez, and by extension, his insistence that he had accepted responsibility, were not credible. Nu ez had given uncorroborated and inconsistent explanations for not identifying his accomplices: first, he claimed that he had not known them before the day of the carjacking, and never learned their names; and, second, he was "afraid" to identify them. See Gonzalez, 12 ___ ________ F.3d at 300 (defendant bears burden of proof under 3E1.1). The district court supportably found that Nu ez' true motive was to "protect" his accomplices, a motive which when coupled with _______ his two pretextual motives for refusing to "inform" (memory lapse and/or fear) belied a genuine acceptance of responsibility.  20 Nonetheless, other observations by the district court remain open to the plausible understanding that a defendant must always, at least where an offense results in death, "inform" on ______ his accomplices in order to qualify for a 3E1.1 adjustment, regardless of any other circumstances in the case:  A defendant who accepts responsibility must do more than that when he's involved in ____ a conspiracy and where [] human life is in- _____ _____ ____ __ ___ volved. He must come forward and identify ______ ____ and help authorities get the other people. . . . A defendant qualifies for a [ 3E1.1] reduction when he truthfully admits the con- ____ duct comprising the offense of conviction and does not falsely deny or frivolously contest relevant conduct that the Court has deter- mined to be true and also does not keep to ___ ____ ___ ____ __ himself the identity of other coconspirators. _______ ___ ________ __ _____ ______________ . . . [M]y point is that if anyone commits a crime with one or more persons, knowing those persons, does not come forward to the author- ities, giving the names of those persons, then you cannot have a full acceptance of ______ ____ responsibility because that entails precisely a catharsis, a full remorse by disclosing the whole thing, being truthful and not conceal- ing any information how to identify . . . these defendants.  As we have indicated, however, such a per se requirement would ___ __ prove as inconsistent with the letter and spirit of section 3E1.1 as its counterpart, see, e.g., McKinney, 15 F.3d at 854. Conse- ___ ____ ________ quently, we are unable to conclude with confidence whether the district court deemed Nu ez' failure to identify his criminal associates as sufficient, by itself, to preclude an adjustment under section 3E1.1, without regard to whether Nu ez knew the names of his accomplices or feared retaliation.  21 Assuming the district court meant that mitigating considerations are never material under section 3E1.1, it erred. Moreover, insofar as the court envisioned a per se bar to its ___ __ consideration of mitigating circumstances, the present record precludes reliable "harmless error" analysis, since we cannot say with any confidence that the court would not have disallowed a section 3E1.1 adjustment solely because Nu ez refused to identify his criminal associates.  The government points to the district court statement that it was "not saying [Nu ez] is getting life because of . . . ___ ______ _______ __ _______ ____ _______ __ [his failure to `inform']." Yet the literal import of the district court's language is not necessarily equivalent to an assurance that Nu ez' life sentence had nothing to do with his refusal to identify his criminal associates. Thus, the quoted statement does not cure the inherent ambiguity created by the categorical remarks the court made earlier. Consequently, on the record as a whole, we cannot say that we are left "with the definite and firm conviction that removal of the inappropriate ground would not be likely to alter the district court's view of the sentence rightfully to be imposed." See Diaz, 39 F.3d at ___ ____ 568. These ambiguities counsel a remand for resentencing for clarification,9 and further factfinding as appropriate. United ______  ____________________ 9Another statement by the district court likewise necessi- tates a remand. It noted, based on a review of the Rule 11 hearing transcript that Nu ez had asked to be "forgiven by the [victim's] family," but "didn't say he was remorseful, that he was willing to cooperate." Tr. at 39. Our review of the tran- script discloses that Nu ez stated: "I would like to ask for- giveness from the family of the young man, (defendant crying). I 22 States v. Berzon, 941 F.2d 8, 20 (1st Cir. 1991).  ______ ______ B. The "Minor Participant" Adjustment B. The "Minor Participant" Adjustment __________________________________ Next we consider whether the district court erred in declining a two-point adjustment under the "minor participant" guideline. See U.S.S.G. 3B1.2(b).10 Nu ez claims it was an ___ error of law to assess his participation exclusively through reference to the hypothetical "average participant" in a carjack- ing and murder, rather than with reference to his coconspirators. See United States v. Brandon, 17 F.3d 409, 460 (1st Cir.), cert. ___ _____________ _______ _____ denied, 115 S. Ct. 80 (1994); United States v. Gregorio, 956 F.2d ______ _____________ ________ 341, 344 (1st Cir. 1992) ("Role-in-the-offense adjustments depend . . . not only on the comparative conduct of persons jointly engaged in criminal activity, but also on comparing each offende- r's actions and relative culpability with the elements of the of- fense.") (citations omitted).  Nu ez mischaracterizes the district court rationale. The court stated very clearly: "A defendant is not a minor  ____________________ know what suffering is because I have a mother, I have a father, and I'm very sorry and I would like them to forgive me." Tr. at ___ ____ _____ 21 (emphasis added). Thus, the district court's compound state- ment ("didn't say he was remorseful, that he was willing to cooperate") may have been either yet another reference to the section 3E1.1 "informer" criterion, or simply a mistaken under- standing that Nu ez had never even stated that he was "sorry" at ______ the time he pled guilty. The present record does not permit us to make a reliable determination.  10"A minor participant means any participant who is less culpable than most other participants." U.S.S.G. 3B1.2, comment. (n.3). An adjustment is allowed "for a defendant who plays a part in committing the offense that makes him substan- tially less culpable than the average participant." Id. 3B1.2, ___ comment. (backg'd.). 23 participant merely because he might be less culpable than others, ______ _______ co-conspirators . . . . Rather he must be less culpable than the average participant in similar offenses." (Emphasis added.) This statement especially the phrase "merely because"  negates the suggestion that the district court found actual coconspirator comparisons immaterial to the Brandon-Gregorio _______ ________ inquiry. Instead, the court acknowledged, as it explained more fully later, that U.S.S.G. 3B1.2(b) entails a bifocal analy- sis.11  We also reject the claim that the evidence does not support the district court ruling. Its fact-specific ruling is reviewed for clear error only, and with "considerable respect" for a sentencing court's superior vantage point. United States ______________ v. Ocasio, 914 F.2d 330, 333 (1st Cir. 1990); see also Gregorio, ______ ___ ____ ________ 956 F.2d at 344. We find no clear error. The evidence revealed that Nu ez voluntarily participated in planning the jail break- out, witnessed the delivery of a revolver to be used in the carjacking, drove around with two coconspirators for several hours searching for an appropriate vehicle, approached the victim with an armed associate, and, as agreed, drove the Pierluisi vehicle from the carjacking scene, despite having heard the fatal gunshot. Finally, the evidence indicates that Nu ez played a more active role in the carjacking-murder than at least one other associate, who merely waited in the car while the shooter, with  ____________________ 11The court stated: "In this case [Nu ez] planned the offense. He participated in the planning of the offense. He cruised with these individuals for about two hours." 24 Nu ez nearby, approached and killed Pierluisi. C. The Requested "Reduced Mental Capacity" Departure C. The Requested "Reduced Mental Capacity" Departure _________________________________________________ Finally, Nu ez argues that the district court erred in refusing a downward departure under U.S.S.G. 5K2.13, Diminished __________ Capacity (Policy Statement), which provides:  ________ If the defendant committed a non-violent ___________ offense while suffering from significantly _______ reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity ___ ______ __ _____ _______ ______ ________ contributed to the commission of the offense, ___________ __ ___ __________ __ ___ _______ provided that the defendant's criminal histo- ry does not indicate a need for incarceration to protect the public. U.S.S.G. 5K2.13, p.s. (emphasis added). Essentially, Nu ez relied on a 1984 diagnosis of borderline mental retardation and paranoid schizophrenia, which conditions so affected his ability to make common-sense judgments, that he was unable to resist his coconspirators' requests that he join in the armed carjacking, or to foresee that a murder might ensue. Recognizing that we normally lack jurisdiction to review a district court's discre- tionary refusal to make a downward departure, see United States ___ ______________ v. Grandmaison, 77 F.3d 555, 560 (1st Cir. 1996), Nu ez instead ___________ argues that the court's refusal to depart was premised on its incorrect interpretation of the phrase "non-violent offense." Id.12 ___  ____________________ 12In essence, Nunez argues that there is an inherent con- flict between 2A1.1 and 5K2.13. The former section increased Nunez' base offense level from 22 to 43 because death resulted from the carjacking. See U.S.S.G. 2A1.1, comment. (n.1); ___ 2B3.1(c). Section 2A1.1 also notes, however, that a downward departure may be warranted where "the defendant did not cause the 25 We need not linger over this claim. Without regard to whether the district court misapprehended the meaning of "non- violent crime," see, e.g., United States v. Weddle, 30 F.3d 532, ___ ____ ______________ ______ 537-40 (4th Cir. 1994) (discussing circuit split concerning proper interpretation of "non-violent offense"), it expressly ruled after defense counsel cited to the 1984 psychiatric reports that it believed Nu ez did not suffer from the re- quired "significantly reduced mental capacity" at the time of the 1994 carjacking: This defendant had this meeting with his friend's nephew where they sat there in this apartment discussing precisely a carjacking, stealing of a car, to commit another crime [i.e., the jail break], and he was there. And then they start cruising around, finding a victim until they found him, found the victim. So . . . [it] [s]eems to me that this is totally inconsistent with the dimin- ished capacity to commit a crime. Tr. at 22. The court pointed out that Nu ez had admitted to long-term, daily use of marijuana, which would tend to support the conclusion that any diminished capacity he might have suf- fered on June 7, 1994 "result[ed] from voluntary use of drugs or other intoxicants." U.S.S.G. 5K2.13, p.s.  We thus lack appellate jurisdiction of this claim. "[I]f the [sentencing] judge says, in effect, . . . that `this circumstance [viz., "significantly reduced mental capacity not  ____________________ death intentionally or knowingly." Nunez says this is inconsis- tent with the district court's interpretation of 5K1.1, i.e., that it forbids departures for anything but "non-violent" crimes. Whatever its questionable merits, we lack jurisdiction to consid- er this claim. See infra. ___ _____ 26 resulting from voluntary use of drugs or other intoxicants"] of which you speak has not been shown to exist in this case,' [then] . . . no appeal lies." United States v. Pierro, 32 F.3d 611, _____________ ______ 619 (1st Cir. 1994), cert. denied, 115 S. Ct. 919 (1995); see _____ ______ ___ also United States v. Regan, 989 F.2d 44, 45 (1st Cir. 1993) ____ _____________ _____ (defendant has the burden of proof under section 5K2.13). Nu ez does not contend that the court misapprehended the criteria for determining whether he suffered from a "significantly reduced mental capacity." Cf. Grandmaison, 77 F.3d at 561 (jurisdiction ___ ___________ lies where district court misapprehended the relevant criteria for ascertaining "aberrant behavior").13 Since some causative reduction in mental capacity is the sine qua non of any downward ____ ___ ___ departure under section 5K2.13, whether the murder-carjacking be deemed "violent" or "non-violent," we need not indeed we cannot decide whether the court also relied on an incorrect interpretation of "non-violent offense." The sentence is vacated, and the case remanded to the The sentence is vacated, and the case remanded to the _______________________________________________________ district court for resentencing, consistent with our opinion and district court for resentencing, consistent with our opinion and _________________________________________________________________ mandate.  mandate.  _______  ____________________ 13While it is unnecessary to decide the soundness of the district court's factual conclusion, we would note that various psychiatric evaluations of Nu ez following his arrest concluded that he did not suffer from any abnormal mental disease or defect on the date of the carjacking, and that he was capable of appre- ciating the consequences of his actions. 27