USCA1 Opinion

 

 April 1, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-2100 UNITED STATES OF AMERICA, Appellee, v. RICHARD OCASIO-RIVERA, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ _________________________ Before Torruella, Selya and Cyr, Circuit Judges. ______________ _________________________ Jeffrey M. Williams, with whom Javier A. Morales Ramos and ___________________ _______________________ Indiano, Williams & Weistein-Bacal were on brief, for appellant. __________________________________ Jose A. Quiles Espinosa, Senior Litigation Counsel, with _________________________ whom Daniel F. Lopez-Romo, United States Attorney, and Edwin O. ____________________ ________ Vazquez, Assistant United States Attorney, were on brief, for _______ appellee. _________________________ April 1, 1993 _________________________ SELYA, Circuit Judge. This is another in the seemingly SELYA, Circuit Judge. _____________ endless line of criminal appeals marching stolidly to the beat of the federal sentencing guidelines. Finding appellant's lamentations to be without merit, we affirm the sentence imposed below. I. I. __ Background Background __________ In February 1992, a federal grand jury in the District of Puerto Rico returned a five-count indictment against a cluster of defendants. Appellant Richard Ocasio-Rivera was named in three of the five counts. On May 5, 1992, Ocasio-Rivera pled guilty to count 4 a count charging that, "[f]rom on or about January 11, 1992 and continuing thereafter up to and including January 24, 1992," he and his codefendants conspired to distribute four kilograms of cocaine to an undercover agent. The court ordered the preparation of a presentence investigation report (PSI Report). At a sentencing hearing held on August 21, 1992, the district judge determined the guideline sentencing range to be 97-121 months (offense level 30; criminal history category I) and imposed an incarcerative sentence slightly below the range's midpoint.1 This appeal ensued. II. II. ___ Discussion Discussion __________ ____________________ 1The other charges against appellant, contained in counts 1 and 5, were dismissed. 2 Ocasio-Rivera's appeal hinges on three assignments of error. We discuss them seriatim. ________ A. A. __ The Alleged Sixth Amendment Violation The Alleged Sixth Amendment Violation _____________________________________ Appellant contends that he had a right, under the Sixth Amendment,2 to have his attorney present during his audience with the probation officer; that he sought to exercise this right; that the interview nonetheless proceeded in counsel's absence; and that, therefore, appellant's sentence should be vacated because it was based, in part, upon information winnowed from him during the uncounselled interview and included in the PSI Report. This contention is reminiscent of a seldom used ketchup bottle: at first glance, it looks full but, even when tipped, slammed, and forcibly shaken, it is very difficult to get anything out of it. The facts are these. At the change-of-plea hearing on May 5, 1992, appellant and his lawyer were advised that a PSI Report would be compiled. On May 22, the probation officer, Antonio Bruno, confirmed in writing that he was performing the required investigation. Defense counsel admits that he received this billet-doux no later than May 26. On June 8, Bruno interviewed appellant. At that time, ____________________ 2The Sixth Amendment provides in pertinent part: In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence. U.S. Const. amend. VI. 3 appellant lodged no objection to proceeding in his attorney's absence. It was not until June 10 two days after the interview had been completed that Bruno received a letter from the attorney asking for the first time to be present when Bruno ___ ___ _____ ____ questioned his client. At the sentencing hearing, appellant neither alleged a Sixth Amendment violation nor moved to strike the uncounselled statements. It is a bedrock principle in this circuit that issues must be squarely raised in the district court if they are to be preserved for appeal. See, e.g., United States v. Slade, 980 ___ ____ _____________ _____ F.2d 27, 30 (1st Cir. 1992); United States v. Figueroa, 818 F.2d ______________ ________ 1020, 1025 (1st Cir. 1987). That principle applies unreservedly in the criminal sentencing context. See United States v. Ortiz, ___ _____________ _____ 966 F.2d 707, 717 (1st Cir. 1992), cert. denied 113 S. Ct. 1005 _____ ______ (1993); United States v. Dietz, 950 F.2d 50, 55 (1st Cir. 1991) _____________ _____ (collecting cases); United States v. Pilgrim Mkt. Corp., 944 F.2d _____________ __________________ 14, 21 (1st Cir. 1991); United States v. Argentine, 814 F.2d 783, _____________ _________ 790-91 (1st Cir. 1987). There is, to be sure, a narrow exception for unusually compelling circumstances, but it is to be "exercised sparingly," mainly in instances where the previously omitted ground will ensure appellant's success and thus prevent a miscarriage of justice. See Slade, 980 F.2d at 31; United States ___ _____ _____________ v. Krynicki, 689 F.2d 289, 291-92 (1st Cir. 1982). ________ That ends the matter. On even the most generous reading of the record, it is pellucidly clear that the Sixth Amendment argument was never called to the sentencing court's 4 attention. Because the issue was not distinctly raised in a timely fashion in the court below, and because the attendant circumstances are manifestly insufficient to overcome this procedural default,3 we conclude that the issue is not properly before us. Consequently, the assignment of error fails. B. B. __ Role in the Offense Role in the Offense ___________________ The court below rejected appellant's plea that he was a "minor" or "minimal" participant in the conspiracy and, thus, deserving of a reduction in the offense level under U.S.S.G. 3B1.2 (Nov. 1991). As with other sentence-decreasing adjustments, a defendant must shoulder the burden of proving his entitlement to a downward role-in-the-offense adjustment. See ___ Ortiz, 966 F.2d at 717; United States v. Ocasio, 914 F.2d 330, _____ _____________ ______ ____________________ 3We pause to mention two of the several factors that counsel against relaxing the raise-or-waive rule in this instance. First, the interests of judicial economy would be poorly served; this issue is unlikely to arise again in the District of Puerto Rico because the probation department's policy is to allow defense counsel to attend presentence interviews upon timely request. Second, although we leave the question open, we do not find appellant's argument "highly persuasive," Krynicki, 689 F.2d ________ at 292, at least at first blush. Four circuits have held that there is no constitutional right to counsel at a routine presentence interview in a non-capital case. See United States ___ _____________ v. Tisdale, 952 F.2d 934, 940 (6th Cir. 1992); United States v. _______ _____________ Johnson, 935 F.2d 47, 50 (4th Cir.), cert. denied, 112 S.Ct. 609 _______ _____ ______ (1991); United States v. Woods, 907 F.2d 1540, 1543 (5th Cir. _____________ _____ 1990), cert. denied, 111 S.Ct. 792 (1991); United States v. _____ ______ ______________ Jackson, 886 F.2d 838, 844-45 (7th Cir. 1989). No circuit has _______ ruled to the contrary although the Ninth Circuit, without reaching the constitutional question, has exercised its supervisory powers to "direct that probation officers be required to permit defendants' counsel to accompany their clients at the presentence interview." United States v. Herrero-Figueroa, 918 _____________ ________________ F.2d 1430, 1433 (9th Cir. 1990). 5 332 (1st Cir. 1990). Reviewing the record in its entirety, we think the sentencing court was amply justified in refusing to label appellant a minor or minimal participant. We explain briefly. Based on the facts contained in PSI Report, the sentencing court could supportably have found that, on January 10, 1992, appellant and a codefendant, Juan Mercado Lopez (Mercado), together negotiated an anticipated multi-kilogram sale of cocaine to an undercover agent; that the two men agreed to sell three ounces as a sample; that appellant remained with the prospective purchaser while Mercado fetched the sample; that appellant repeatedly assured the "customer" about the quality of the cocaine and the availability of the larger quantity for which the trio had been dickering; that the sample was delivered; and that, eleven days later, appellant received the purchaser's call that he was ready to close the deal. The capture trap sprang shut as consummation neared. Although appellant strives to portray himself as a minnow in service to a big fish (Mercado), his portrayal is unconvincing. The facts set out above, in the ensemble, paint a picture of appellant as far more than a minnow. The logical inference and the one apparently adopted by the court below is that the two men were roughly equal partners, sharing risks, responsibilities, and rewards. On this basis, we think the district court acted well within its proper province in finding that appellant's role was neither minor nor minimal. See United ___ ______ 6 States v. St. Cyr, 977 F.2d 698, 706 (1st Cir. 1992) (holding ______ _______ that "when there are two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous"); United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. _____________ ____ 1990) (similar). Appellant's principal rejoinder is that, since the January 10, 1992 "sample sale" was the subject of count 1 and since count 1 was dismissed, see supra note 1, the judge should ___ _____ not have taken the evidence into account. We disagree. It is well settled in the criminal law that evidence of prior uncharged conduct (or, as here, evidence of prior conduct related to a defunct count) is relevant and admissible to complete the story of a charged crime by illuminating the chain of events leading up to the charged crime and the context in which the crime occurred. See, e.g., United States v. Devin, 918 F.2d 280, 286, 287-88 (1st ___ ____ _____________ _____ Cir. 1990); United States v. Reveron-Martinez, 836 F.2d 684, 688 _____________ ________________ (1st Cir. 1988); United States v. Currier, 821 F.2d 52, 55 (1st _____________ _______ Cir. 1987). So here. The January 10 sale, involving, as it did, a sample for the larger transaction that the parties were contemplating, was in the nature of a dress rehearsal. It was, therefore, eminently reasonable for the judge to extrapolate from the events of January 10 in deducing the appellant's place within, and relationship to, the conspiracy charged in count 4. C. C. __ Acceptance of Responsibility Acceptance of Responsibility ____________________________ U.S.S.G. 3E1.1 (Nov. 1991) allows a sentencing court 7 to bestow a two-level downward adjustment upon a defendant who accepts responsibility. The ultimate question under section 3E1.1 is not whether the defendant has uttered "a pat recital of the vocabulary of contrition," but whether he has accepted full responsibility for his part in the offense of conviction by demonstrating "candor and authentic remorse." United States v. _____________ Royer, 895 F.2d 28, 30 (1st Cir. 1990); accord, e.g., United _____ ______ ____ ______ States v. Uricoechea-Casallas, 946 F.2d 162, 167 (1st Cir. 1991); ______ ___________________ United States v. Bradley, 917 F.2d 601, 606 (1st Cir. 1990). The _____________ _______ defendant has the burden of proving his entitlement to an acceptance-of-responsibility credit, see Bradley, 917 F.2d at ___ _______ 606, and the sentencing court's determination to withhold the reduction will be overturned only if it is clearly erroneous. See Royer, 895 F.2d at 29. ___ _____ We have placed a gloss on the use of section 3E1.1 in multiple-count cases. In United States v. Perez-Franco, 873 F.2d _____________ ____________ 455 (1st Cir. 1989), we held that, in order to obtain the reduction, a defendant "must accept responsibility solely for the counts to which he is pleading guilty." Id. at 463. Here, ___ appellant unsuccessfully sought an acceptance-of-responsibility discount in the court below. On appeal, he contends that the district judge transgressed the Perez-Franco rule, denying relief ____________ because he, appellant, would not accept responsibility for the nefarious conduct underlying the dismissed counts. The record belies the contention. As indicated previously, see supra Part II(B), ___ _____ 8 appellant labored at sentencing to convince the court that he was a mere tagalong in a conspiracy orchestrated by Mercado. The judge debunked this account and found instead that appellant, by proclaiming he was a tagalong when he was actually a full partner, had engaged in a campaign to minimize his involvement in __ the offense of conviction. It was on that basis that the lower ___ _______ __ __________ court denied the downward adjustment. We discern no error. Where a defendant resorts to evasions, distortions, or half-truths in an effort to minimize his culpability, whether during a presentence interview or in his allocution, the district court may appropriately decide to withhold an acceptance-of- responsibility credit under section 3E1.1. See United States v. ___ ______________ Reyes, 927 F.2d 48, 51 (1st Cir. 1991); Bradley, 917 F.2d at 606; _____ _______ see also United States v. Chalkias, 971 F.2d 1206, 1216 (6th ___ ____ ______________ ________ Cir.), cert. denied, 113 S. Ct. 351 (1992). This case is cast in _____ ______ that mold. The sentencing court made an explicit finding of conscious minimization a finding that was adequately supported by the record and not vulnerable to clear-error attack. No more was exigible. III. III. ____ Conclusion Conclusion __________ We need go no further. The ketchup bottle is dry (or, at least, congealed) and the other condiments served up by appellant lack zest. Having tasted the full flavor of the unseasoned appeal, we conclude that appellant's sentence was lawful. 9 Affirmed. Affirmed. ________ 10