USCA1 Opinion

 

 November 3, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1074 MARIA ELVIRA MORENO, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE *[Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ___________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ ___________________ Maria Elvira Moreno on brief pro se. ___________________ Jay P. McCloskey, United States Attorney, and F. Mark _________________ ________ Terison, Assistant U.S. Attorney, on brief for appellee. _______ __________________ __________________ ______________________________ *Of the District of Puerto Rico, sitting by designation. Per Curiam. Maria Elvira Moreno was convicted of __________ one count of conspiring with Andres Gonzalez to distribute and to possess with intent to distribute in excess of 500 grams of cocaine. We affirmed her conviction in United ______ States v. Moreno, 947 F.2d 7 (1st Cir. 1991). Thereafter, ______ ______ Moreno brought a motion under 28 U.S.C. 2255 to vacate her sentence, alleging that both her trial and appellate counsel had rendered her ineffective assistance of counsel. The district court denied her petition. Concluding that Moreno has not met her burden of proving by a preponderance of the evidence that her counsel's performance fell below an objective standard of reasonableness and that such deficient performance had prejudiced her defense, see Strickland v. ___ __________ Washington, 466 U.S. 668, 687 (1984), we now affirm. __________ I. Ineffective Assistance by Trial Counsel _______________________________________ Moreno alleges that her trial counsel was ineffective for several reasons, which we discuss in turn. Rule 29 Motions. Moreno claims that her counsel _________________ moved ineffectively for a judgment of acquittal under Fed. R. Crim. P. 29. Moreno says that her counsel should have submitted a written memorandum in support of her motion because the court would have been better able to evaluate counsel's arguments that insufficient evidence existed to convict Moreno beyond a reasonable doubt. Her claim is meritless. Not only is it the general practice to make Rule -2- 29 motions orally, without written support, but we have no doubt that the court did not require any special written instruction on how to evaluate evidence in light of the reasonable doubt standard. Moreover, the court showed complete familiarity with the evidence in explaining its denial of the Rule 29 motion. Thus, Moreno has not shown that her attorney's failure to submit a written memorandum in support of her Rule 29 motion fell below objective standards of reasonableness, or that reviewing a written memorandum would have altered the court's view of the evidence. Moreno also faults her attorney for not renewing her Rule 29 motion after the jury rendered its verdict and was discharged. As it was, Moreno's attorney moved twice for acquittal, first after the government had presented its case- in-chief and then after the close of all the evidence, and both times she was unsuccessful. Moreno has not said what further arguments her attorney could have presented after the jury was discharged that would have caused the court to reconsider its prior rulings. Consequently, she has not shown that she was prejudiced by her attorney's failure to renew the motion a third time. Severance/Co-Conspirator Statements. Moreno ______________________________________ appears to argue that her counsel was ineffective either because she did not move to sever Moreno's trial from Gonzalez's trial, or because she did not object to the -3- admission of co-conspirator statements, specifically the testimony by Laura Speer that Gonzalez had told her that Moreno had gift-wrapped a package of cocaine Speer was to deliver to John Carmichael. Moreno's arguments appear to derive from her challenge to the district court's Petrozziello finding, see United States v. Petrozziello, 548 ____________ ___ _____________ ____________ F.2d 20 (1st Cir. 1977), which she raised in her original section 2255 motion. The magistrate interpreted her challenge to suggest that counsel was ineffective in failing to request a ruling under Petrozziello (although both ____________ preliminary and final Petrozziello findings were made by the ____________ court), and rejected her claim as conclusory since she did not identify a single co-conspirator statement to which counsel should have objected. The district court believed that Moreno's claim essentially alleged that her counsel was ineffective for not moving to sever Moreno's trial from Gonzalez's trial. Because of the obvious ambiguity of her original claim, the precise claim to be addressed on appeal is also somewhat uncertain.1 Based on our review of the ____________________ 1. For example, strictly speaking Moreno did not complain to the district court that her trial counsel had not moved to sever her trial from Gonzalez's, and so, by virtue of the "bedrock" principle in this circuit that we do not review claims not "squarely" presented to the court below, see ___ United States v. Ocasio-Rivera, 991 F.2d 1, 3 (1st Cir. ______ _____________ 1993), we normally would not consider her claim now. Yet, the district court analyzed her claim as if she had presented that argument. Because the district court discussed the severance issue even though Moreno did not raise it, an argument could be made that we should consider that issue on -4- record, and putting to the side the question of how to interpret Moreno's original claim, we conclude that Moreno has not shown ineffective assistance of counsel. First, the trial transcript suggests that Moreno's counsel had moved, unsuccessfully, for severance, and also indicates that she essentially moved for severance again when the government proffered Laura Speer's testimony that Gonzalez had told her that Moreno had gift-wrapped a package of cocaine intended for delivery by Speer to Carmichael. Moreno's attorney objected vigorously to the admission of Speer's testimony under Bruton v. United States, 391 U.S. 123 ______ _____________ (1968), and Fed. R. Evid. 403, but the court concluded that Speer's testimony was admissible against Moreno as non- hearsay co-conspirator statements and that its probative value outweighed its prejudicial effect. The court also concluded that severance was not warranted. Second, Gonzalez testified at trial that Moreno knew nothing about his cocaine dealing, and so, far from impairing Moreno's defense, Gonzalez's testimony bolstered it. Therefore, the district court's conclusion that severance was not warranted was justified. See Fed. R. Crim. ___ P. 14 (permitting severance where a joint trial with a co- defendant would result in undue prejudice to a defendant). ____________________ appeal. -5- Third, the district court's determination under Petrozziello that sufficient evidence of a conspiracy existed ____________ to permit co-conspirator statements to be introduced against Moreno was not clearly erroneous. The evidence showed that Gonzalez and Moreno were long-time companions who lived together. Although Carmichael most frequently dealt only with Gonzalez in buying cocaine, occasionally Moreno "fetched" Carmichael, bringing him to where Gonzalez waited to effect the sale. Carmichael said that Moreno never spoke to him about cocaine when he met her, but he did testify that occasionally Moreno would hand him the cocaine wrapped up to look like a gift. Subsequently, Speer, who had introduced Carmichael to Gonzalez and had received a "finder's fee" for doing so from Gonzalez's subsequent cocaine sales to Carmichael, testified about Gonzalez's statement that Moreno had gift-wrapped the package of cocaine Speer was to deliver to Carmichael. Furthermore, Moreno was present at a controlled buy in New York where Carmichael, now helping the government, used marked Drug Enforcement Administration funds to buy cocaine from Gonzalez; on that occasion, Moreno arrived first to greet Carmichael, told him that he was late, and waited with him for Gonzalez; although Carmichael and Gonzalez apparently discussed the sale of cocaine out of her earshot, after their conversation was done, she waited with Carmichael for another half hour while Gonzalez went to get -6- the cocaine. The next day she was observed engaging in countersurveillance before Carmichael and Gonzalez began negotiations with undercover government agents posing as prospective cocaine purchasers. She also actively urged that Carmichael stay involved in the negotiation when the government agents suggested that he leave. There was evidence that she had prepared for the trip to Maine, where the negotiation with undercover agents took place, and that she had not just gone there on the spur of the moment for a lobster dinner and a boat ride, as she claimed. The purse she carried when she was arrested in Maine contained a significant portion of the marked money which Carmichael had given to Gonzalez during the controlled buy in New York the preceding day. Since the evidence sufficed to show a conspiracy to distribute cocaine among Gonzalez, Moreno, and Speer, the court's admission of Carmichael's testimony and Speer's statements against Moreno was not clearly erroneous. Therefore, counsel's failure to object to the court's Petrozziello finding was not prejudicial and so was not ____________ ineffective assistance of counsel. Failure to Request Special Instructions. Moreno __________________________________________ contends that her defense was "unique" and that counsel rendered ineffective assistance by failing to request special jury instructions. Moreno's defense was essentially that -7- insufficient evidence had been presented to show beyond a reasonable doubt that she was a knowing participant in the conspiracy to distribute cocaine, and her counsel argued vigorously to the jury that convicting Moreno of conspiracy would be tantamount to finding her guilty by mere association with Gonzalez. This defense strikes us as a fairly common one, and our review of the record shows that the court gave the jury correct instructions on the elements the government was required to prove to convict Moreno of conspiracy: that Moreno and Gonzalez had willfully formed an agreement to distribute cocaine and to possess with intent to distribute cocaine and that they had intentionally and willfully conspired knowing the unlawful purpose of the conspiracy. The court also instructed the jury that it could not find the defendants guilty merely by virtue of their association with one another or by their mere presence at the scene of a crime knowing that a crime was being committed. Moreno alleges further that her attorney should have asked for an instruction that the jury could not find that a conspiracy existed where a government informant who intended to frustrate the conspiracy is the alleged co- conspirator. The conspiracy was not alleged to exist between Carmichael, who acted as a government informant, and Moreno, but among Moreno, Gonzalez, and others, and so the rule that government agents cannot be co-conspirators did not apply, -8- and there was no need for such an instruction.2 See United ___ ______ States v. Giry, 818 F.2d 120, 126 (1st Cir.), cert. denied, ______ ____ ____________ 484 U.S. 855 (1987). Moreno's other claims of error relating to the alleged need to give special jury instructions are equally meritless. II. Ineffective Assistance by Appellate Counsel ___________________________________________ Moreno alleges that the lawyer who prosecuted her appeal was ineffective because he failed to appeal her sentence. According to Moreno, the district court's decision not to decrease her base offense level by four levels for her allegedly minimal role in the conspiracy, see U.S.S.G. ___ 3B1.2, was erroneous because the evidence showed that she was the least culpable of the conspirators and because the court's decision conflicted with its own findings at sentencing. We cannot say that the court's refusal to grant Moreno the requested four-level reduction was clearly erroneous, and we see no conflict between the findings the court made at sentencing and its decision not to grant the downward adjustment. ____________________ 2. At the request of defense counsel, the court did instruct the jury that it had to evaluate with particular care the testimony of both Speer, who had violated certain conditions of her parole and then testified at trial under a grant of immunity, and Carmichael, who was arrested on drug charges and testified at trial pursuant to an agreement with the government, because both might be inclined to give false testimony in order to secure certain advantages for themselves in view of their own violations of law. -9- Although section 3B1.2 indicates that a reduction in base offense level is warranted for defendants "who are plainly among the least culpable" of a group engaged in criminal activity, guideline commentary also says that a defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. 3B1.2(a), comment. (n.1) (Nov. 1990). The commentary says further that a downward adjustment for minimal participation is to be used "infrequently," and gives as an example of a minimal participant someone whose only role is to offload part of a single marijuana shipment or to be courier for a single smuggling transaction of a small amount of drugs. Id. (n.2). At sentencing, the court found ___ that Moreno knew "what was going on," discounted Gonzalez's testimony that Moreno was on the "periphery" of the conspiracy, and concluded that the evidence showed that she was not a minimal participant in the conspiracy, conclusions which were not clearly erroneous in light of the evidence presented at trial. We note as well that the evidence showed that the conspiracy to which Moreno was a party was ongoing and contemplated multiple transactions involving significant quantities of cocaine. Accordingly, we conclude that the court's determination that Moreno was not a minimal participant was justified. Consequently, appellate counsel's -10- failure to appeal the court's refusal to make the requested downward adjustment did not prejudice Moreno and so was not ineffective assistance of counsel. The judgment of the district court is affirmed. ________ -11-