USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1121

 UNITED STATES,

 Appellee,

 v.

 TROY UPHAM,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE 

 [Hon. Morton A. Brody, U.S. District Judge]

 Before

 Boudin, Lynch, and Lipez, Circuit Judges.
 
 

 Donald R. Furman, Jr., on brief for appellant.
 F. Mark Terison, Assistant United States Attorney, with whom
Jay P. McClosky, United States Attorney, and Gail Fisk Malone,
Assistant United States Attorney, were on brief for appellee.

February 12, 1999

 
 

 BOUDIN, Circuit Judge. In February 1997, U.S. Customs
agents who were monitoring a "chat room" on the Internet, while
engaged in an undercover investigation, received in Buffalo, New
York a number of images depicting child pornography. Records of
the Internet service provider showed that the computer from which
the images had been sent was owned by Kathi Morrissey at an address
in Costigan, Maine. Acting pursuant to a warrant, the agents
conducted a search of Morrissey's home on March 21, 1997.
 Among the items seized and taken from the house were
Morrissey's computer and a number of diskettes. Using a computer
utilities program and the "undelete" function, the government was
able to recover from the computer's hard disk and the diskettes
some 1,400 previously deleted images of minors engaged in sexually
explicit conduct. These images included the relatively small
number of images that the agents had received in Buffalo in
February 1997 from Morrissey's computer.
 Further investigation revealed that from about September
1996 until March 1997, the inhabitants of Morrissey's house
included Morrissey, her two young children and her then-boyfriend
Troy Upham. Later evidence, including admissions from Upham,
showed that Upham was the principal user of the computer and that
child pornography had been sent and received by him over the
Internet on a regular basis. Upham left Morrissey's home for
Canada in mid-March 1997. In May 1997, he was indicted by a
federal grand jury, and he returned from Canada to face trial.
 As set forth in a superceding indictment, the grand jury
charged Upham with four counts of transporting in interstate
commerce computer graphic images of minors engaged in sexually
explicit conduct, the production of which involved the use of
minors engaged in such conduct; each count related to transmissions
on a different date in February 1997. See 18 U.S.C. 2252(a)(1). 
The fifth count charged Upham with possession, on "a date
uncertain" but between about February 7, 1997, and March 21, 1997,
of the 1,400 images of minors engaged in sexually explicit conduct,
the production of which involved the use of minors engaged in such
conduct. See 18 U.S.C. 2252(a)(4)(B).
 Asserting numerous grounds, Upham filed a motion to
suppress evidence derived from the search of Morrissey's home. On
August 11, 1997, the district court conducted an evidentiary
hearing on the motion. The district court denied the motion, and
the images derived from the search--recaptured from their deleted
state--were later admitted at trial. We defer for the moment a
description of the grounds now advanced by Upham to justify
suppression and the government's responses to those claims.
 Upham was tried by a jury in a three-day trial conducted
in September 1997. The government provided evidence as to the
images received in Buffalo from Morrissey's computer and of those
recovered from the computer hard drive and disks seized in the
search. It also offered evidence connecting Upham with the
transmission and receipt of the images. Finally, a doctor testified
for the government to provide medical evidence as to the ages of
the children depicted in the images. 
 Upham testified at trial in his own defense but did not
deny sending and receiving child pornography over the Internet. 
Instead, Upham argued that he had been sexually abused as a child
and that his exchanges of such images on the Internet with other
"chat room" participants were done in connection with his
preparation of a serious book relating to child abuse. He said
that he had written a small number of pages, albeit over a very
long period, as part of this project.
 The jury convicted Upham on all five counts. The jury
was given a separate interrogatory to be answered if it convicted
on one or more counts: "Was the defendant's sole purpose in
committing the offense or offenses to produce a serious literary
work?" The jury answered in the negative. In due course, Upham
was sentenced to 78 months in prison, the minimum provided by the 
Sentencing Guidelines for the offenses in light of Upham's prior
criminal history.
 Upham now appeals, raising a wide range of issues in a
brief submitted by counsel and in a supplement prepared by Upham
himself. Of these, the only one requiring full discussion is
Upham's multi-part claim that the motion to suppress should have
granted. In particular, Upham says that the warrant was too broad
and that its scope was exceeded when the government recovered from
the hard drive and diskettes the images that had previously been
deleted. 
 At the outset, the government objects that Upham had no
standing to challenge the search. This is so, it says, because
Upham has now conceded that he broke up with Morrissey and moved
out on March 13, 1997, before the search occurred, and he therefore
lacked any privacy interest in the premises. See Rakas v.
Illinois, 439 U.S. 128, 131 n.1 (1978). The government concedes
that it did not make this argument in the district court. Quite
possibly, it did not then have what it now regards as a clear
admission from Upham, namely, that when he moved to Canada, he did
not intend to return to Morrissey's house.
 Although the government has waived the standing argument,
nothing prevents us from considering it if we choose to do so,
always assuming this would not be unfair to Upham. Cf. United
States v. Pervaz, 118 F.3d 1, 4 (1st Cir. 1997). In this case we
think it would not be fair. Despite some evidence of the break-up,
the record is not so clear as to prevent Upham from arguing (and
indeed testifying) that he planned to return or had some other
residual link to the property. The proper place to settle such
issues was the suppression hearing.
 Upham's first challenge to the warrant in this court is
that it was generic in its description of what was to be seized and
did not satisfy the supposed tests for such a warrant. The 
warrant itself attached, and incorporated by reference, the list of 
materials to be seized that had been included in the application
for the warrant. The first two items on the list--the only ones
directly pertinent here--were as follows:
 Any and all computer software and
 hardware, . . . computer disks, disk drives .
 . . .

 Any and all visual depictions, in any
 format or media, of minors engaging in
 sexually explicit conduct [as defined by the
 statute].

 The government says that neither paragraph is defective. 
The government also says that Upham's attack on the warrant as too
general was not made in the motion to suppress and that Upham is
therefore limited to plain error on this issue. The government
appears to be right as to waiver, but since we think there was no
error at all, we prefer to address the matter in these terms in
order to give guidance on what may be a recurring issue. 
 The question whether a warrant is sufficiently
"particular" has been much litigated with seemingly disparate
results. See Twenty-Sixth Annual Review of Criminal Procedure, 85
Geo. L.J. 821, 836-38 & nn. 75-78 (1997)(collecting cases). The
root is the Fourth Amendment's direction that a warrant describe 
"particularly" the place to be searched and "the persons or things
to be seized." U.S. Const. amend IV. The requirement of
particularity arises out of a hostility to the Crown's practice of
issuing "general warrants" taken to authorize the wholesale
rummaging through a person's property in search of contraband or
evidence. See Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).
 The cases on "particularity" are actually concerned with
at least two rather different problems: one is whether the warrant
supplies enough information to guide and control the agent's
judgment in selecting what to take, see United States v. Abrams,
615 F.2d 541, 545-46 (1st Cir. 1980); and the other is whether the
category as specified is too broad in the sense that it includes
items that should not be seized, see United States v. Kow, 58 F.3d
423, 427 (9th Cir. 1995). See also Davis v. Gracey, 111 F.3d 1472,
1478-79 (10th Cir. 1997) (discussing both problems). 
Unfortunately, making a warrant more objective may also make it
broader, and vice versa.
 Upham's main attack is on the first paragraph, allowing
the seizure of computer equipment, which he describes as "generic." 
Although Upham relies principally on United States v. Klein, 565
F.2d 183, 188 (1st Cir. 1977), that case was concerned with whether
a warrant was imprecise because it permitted unduly subjective
judgments. Here, the first paragraph is easily administered based
on objective criteria (i.e., whether the items seized are computer
equipment). The problem is not imprecision but arguable
overbreadth.
 As a practical matter, the seizure and subsequent off-
premises search of the computer and all available disks was about
the narrowest definable search and seizure reasonably likely to
obtain the images. A sufficient chance of finding some needles in
the computer haystack was established by the probable-cause showing
in the warrant application; and a search of a computer and co-
located disks is not inherently more intrusive than the physical
search of an entire house for a weapon or drugs. We conclude, as
did the Ninth Circuit in somewhat similar circumstances, see United
States v. Lacy, 119 F.3d 742, 746-47 (9th Cir. 1997), that the
first paragraph was not unconstitutionally overbroad.
 Of course, if the images themselves could have been
easily obtained through an on-site inspection, there might have
been no justification for allowing the seizure of all computer
equipment, a category potentially including equipment that
contained no images and had no connection to the crime. But it is
no easy task to search a well-laden hard drive by going through all
of the information it contains, let alone to search through it and
the disks for information that may have been "deleted." The record
shows that the mechanics of the search for images later performed
off site could not readily have been done on the spot.
 The government argues, in the alternative, that the
second paragraph, allowing seizure of the unlawful images, alonejustifies the seizure of the equipment regardless of the first
paragraph. Upham claims that the second paragraph is also not
"particular" enough but does so by misquoting the paragraph and his
objection is unpersuasive. Our concern with the government's
alternative argument is a different one, which we note without
seeking to resolve the difficult problems thus posed.
 There is no doubt that a warrant that contained only the
second paragraph would permit an on-site search of any "container"
that might reasonably have the images concealed "inside"--including
the computer and any disks. See United States v. Ross, 456 U.S.
798, 820-22 (1982); United States v. Giannetta, 909 F.2d 571, 577
(1st Cir. 1990). However, there is some division in the case law
as to whether and when the police may seize and remove from the
premises items that are not named in the warrant merely in the
reasonable hope that a search of those items later on will lead to
recovery of the items that are named. Certainly, there might be
legitimate doubt whether a warrant authorizing a search of a house
for a murder weapon would permit the police to cart off the entire
contents of the house, including the refrigerator, for purposes of
a later search.
 This problem arises in a variety of different contexts
and in many permutations; matters of degree are involved and there
is probably no single rule that resolves all such situations. In
this instance, it is unnecessary to decide whether removal of the
computer equipment could be justified solely by the second
paragraph since the first paragraph clearly authorized the seizure
of the equipment, allowing it to be taken off site. Whether the
subsequent off-site search for the images presented any problem is
the subject to which we next turn.
 Upham's second major claim of error is that the recovery
of previously deleted information on the hard drive and diskettes
was outside the scope of the warrant. It is settled law that the
search and seizure conducted under a warrant must conform to the
warrant, see Marron v. United States, 275 U.S. 192, 196-97 (1927),
or some well-recognized exception. E.g., Horton v. California, 496
U.S. 128, 130 (1990); United States v. Robles, 45 F.3d 1, 6-7 (1st
Cir.), cert. denied, 115 S. Ct. 1416 (1995) (plain view seizures). 
Here, Upham's argument is two-fold: that the warrant did not
authorize a search of the computer at all, and that it did not
authorize the undeleting of previously undeleted information.
 The first branch of the argument is hopeless. The
warrant explicitly authorized the seizure of both the computer plus
diskettes and the unlawful images. The images--we ignore the
deletion question for the moment--were "inside" the computer or
diskettes. The extraction of unlawful images from within the
computer and diskettes was therefore contemplated by the warrant.
See, e.g., State v. Petrone, 468 N.W.2d 676, 681 (Wisc. 1991)
(permitting development of undeveloped film seized pursuant to a
warrant without requiring additional warrant); State v. Warren, 306
S.E.2d 446, 449 (N.C. 1983) (permitting lab processing of
bloodstains gathered in a lawful search without additional
warrant).
 The other and more serious branch of the argument is a
challenge to the recovery of deleted material. On the diskettes,
the government recovered the images simply by using the undelete
function of the computer. However, the hard disk had been
reformatted by Upham on March 8, 1997, a process that erases some
of the indexing code that allows undeleting to be done quickly. But
until the deleted information is actually overwritten by new
information, the old information can often be recovered by a
specialized utility program, which is what the government did in
this case.
 The seizure of unlawful images is within the plain
language of the warrant; their recovery, after attempted
destruction, is no different than decoding a coded message lawfully
seized or pasting together scraps of a torn-up ransom note. SeeCommonwealth v. Copenhefer, 587 A.2d 1353, 1356 (Pa. 1991); cf.Petrone, 468 N.W.2d at 681. The March 21 warrant did not prescribe
methods of recovery or tests to be performed, but warrants rarely
do so. The warrant process is primarily concerned with identifying 
what may be searched or seized--not how--and whether there is
sufficient cause for the invasion of privacy thus entailed.
 We turn now, and briefly, to a quite different subject.
Upham has a pair of related arguments, one addressed to the
sufficiency of the evidence and the other to the jury instructions. 
Both build upon the assertion that Upham could not properly be
convicted for knowing possession of unlawful images that he
believed to have been deleted from the computer and diskettes and
may not have known could be recovered. 
 Upham did not present these issues to the trial court. 
He did move for a judgment of acquittal but did not raise this
request or objection. And he did make objections to the
instructions but not the one now pressed. Sufficiency of the
evidence objections are waived, if not made below, except where
necessary to avoid "clear and gross" injustice, see United Statesv. Greenleaf, 692 F.2d 182, 185 (1st Cir. 1982), cert. denied, 103
S. Ct. 1522 (1983); and failure to object or make a proper request
at the instruction stage is fatal except for plain error. SeeUnited States v. Campbell, 874 F.2d 838, 841 (1st Cir. 1989).
 In this case, we are satisfied that the alleged errors
now complained of had no effect on the verdict and thus fail the
plain error test. See United States v. Olano, 507 U.S. 725, 732
(1993). The evidence showed overwhelmingly that Upham knowingly
transmitted, received and possessed unlawful images prior to their
attempted deletion; the recaptured images were perfectly competent
evidence of crimes committed before their deletion. Conviction did
not depend on the question (which we do not decide) of whether it
would be unlawful standing alone to possess, with the requisite
knowledge, a hard drive or diskettes with deleted (but
recapturable) images.
 Finally, in challenging his sentence, Upham objects that
the district judge refused to afford Upham a downward adjustment
for acceptance of responsibility. See U.S.S.G. 3E1.1. Upham is
aware that the adjustment is rarely allowed where the defendant
declines to plead guilty, see id. app. note 2, but he says that in
this case he did not contest possession and insisted on trial only
to present his "First Amendment" defense.
 "Acceptance of responsibility" is not abstractly defined
by the guidelines. Instead, the concept is refined by a series of
comments, see U.S.S.G. 3E1.1, app. notes 1-6. One comment ties
the reduction pretty closely to guilty pleas, saying only
"rare[ly]" will the adjustment be granted to one who insists on
trial and adding that even a guilty plea does not assure the
reduction. See id. app. note 2. Still, the same comment says that
even a defendant who insists on trial "may" show acceptance in rare
cases, and it illustrates the point:
 This may occur, for example, where a defendant
 goes to trial to assert and preserve issues
 that do not relate to factual guilt (e.g., to
 make a constitutional challenge to a statute
 or a challenge to the applicability of a
 statute to his conduct).
Id.

 Arguably, the main thrust of Upham's defense at trial was
his claim that he had possessed child pornography in order to
write a book about it. And it may be that going to trial solely to
present this alleged defense falls within the spirit, if not the
letter, of the guideline comment just quoted. But the comment does
little more than remove one barrier to the adjustment. The
surrounding language in the comment, and the purpose of affording
the adjustment, confirm that it still remains for the defendant to
show affirmatively that he did "accept responsibility" for his
offense. See also U.S.S.G. 3E1.1(a); United States v. Lombard,
72 F.3d 170, 187 (1st Cir. 1995). 
 Here, the district judge ruled that the factual premise
of the defense was untrue, pointing to the jury's finding that
Upham's conduct had not been prompted solely by literary ambition.
This ruling is not "clearly erroneous," the normal standard of
review. See United States v. Ocasio-Rivera, 991 F.2d 1, 4 (1st
Cir. 1993). Indeed, the evidence strongly points to the conclusion
that, however tangled Upham's motivations may have been, sexual
gratification was a central aim of his actions. Over many years of
purported book writing, Upham had written only a few pages of this
supposed work.
 It may be a bit of an oversimplification to say (after
Freud) that Upham must have been consciously lying at trial about
his own motives. But a defendant who presents false testimony at
trial, in an effort to minimize his culpability, is hardly in a
position to insist that the judge grant him a reduction for
acceptance of responsibility. See U.S.S.G. 3E1.1 app. note 1(a). 
In all events, the district court in this case did not exceed the
"great deference" accorded the sentencing judge in evaluating
claims of acceptance of responsibility. Id. app. note 5.
 Other claims presented on Upham's behalf have been
considered (e.g., a claim that the district court erred in finding
one or more of the images were sadomasochistic and so warranted an
upward adjustment), but do not require separate discussion. The
penalty is obviously severe but this is due in part to upward
adjustments, like that just mentioned, and significant prior
criminal history, including a prior child-pornography conviction
under state law.
 Affirmed.