# United States Court of Appeals
## For the First Circuit

---

No. 99-1343

UNITED STATES,

Appellee,

v.

JESSICA VEGA-COREANO,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fuste, U.S. District Judge]

---

Before

Stahl and Lynch, Circuit Judges,
and Gorton,* U.S. District Judge.

---

Luis Rafael Rivera on brief for appellant.
Nelson Perez-Sosa, Assistant United States Attorney, Jorge E. Vega-Pacheco, Assistant United States Attorney, and Guillermo Gil, United States Attorney, on brief for appellee.

---

August 30, 2000

---

_____
*Of the District of Massachusetts, sitting by designation.

**STAHL, <u>Circuit Judge</u>.**   The Defendant, Jessica Vega-Coreano ("Vega"), pleaded guilty to acting as an accessory after the fact to a robbery.  She now appeals her sentence.  For the following reasons, we affirm.

## I.

### Background

On May 13, 1997, three armed robbers dressed as Loomis Fargo security guards seized control of a Loomis Fargo truck depot in Ponce, Puerto Rico.[1]  As armored vehicles arrived at the depot, the drivers were held at gunpoint and the contents of each truck were removed to a getaway van.  The robbers escaped with over five million dollars that Loomis Fargo had transported from Banco Popular, Banco Santander, and a United States postal facility.

On May 28, 1997, a grand jury returned an indictment against those purportedly responsible for the robbery.  The Superseding Indictment that followed alleged, in pertinent part, that Vega had acted as an accessory after the fact to the robbery, in violation of 18 U.S.C. § 3.  Although Vega initially pleaded not guilty, she later changed her plea and received a sentence of eighty-seven months in prison with three years of

---

[1]At the time, Loomis Fargo was called Wells Fargo.  For convenience, we will refer to the company by its present name.

supervised release.  Vega appeals her sentence on a variety of grounds.

**II.**

In reviewing a sentence under the United States Sentencing Guidelines ("the Guidelines"), "[w]e first determine the applicability of [each guideline] to a particular case de novo. After determining the guideline's scope and meaning, we review the district court's factual determinations for clear error, giv[ing] due deference to the district court's application of the guidelines to the facts." United States v. Cali, 87 F.3d 571, 575 (1st Cir. 1996) (citations and internal quotation marks omitted). With this standard of review in mind, we turn to the merits.

**A.**

Vega contends that because she did no more than give refuge to those charged with committing the robbery, her base offense level should have been capped at twenty pursuant to U.S.S.G. § 2X3.1.

Section 2X3.1 of the Guidelines provides that for the crime of acting as an accessory after the fact, the defendant's base offense level should be "6 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 30." Even so, "where the [defendant's] conduct is limited to harboring a fugitive," the Guidelines indicate that the offense level "shall not be more than level 20." Id. Here,

-5-

although the district court applied the six level adjustment that U.S.S.G. § 2X3.1 requires, it did not cap Vega's base offense level at twenty because, in its view, she had done more than simply giving shelter to fugitives.

The record amply supports this view. Jessica Diaz testified that on the day of the robbery, Vega had accompanied one of the robbers, Jose Ramos-Cartagena, out of the house, at first for one hour and then for two hours. When Ramos returned from the robbery, Vega helped him secrete the proceeds of the robbery by retrieving a key for him. Vega later advised someone named "Rodi" that the money had been counted successfully. Finally, using a false name, Vega obtained three hotel rooms for the other participants in the robbery to use as a hideout. Against this background, the district court was entitled to find that Vega had helped the other defendants in ways that were not "limited to harboring a fugitive." Id. There was no clear error in refusing to cap Vega's base offense level at twenty under § 2X3.1.

**B.**

Vega also claims that the district court should have reduced her offense level to reflect her acceptance of responsibility. See U.S.S.G. § 3E1.1.

Section 3E1.1 of the Guidelines provides that a defendant's offense level should be reduced by two points, and sometimes three points, if she "clearly demonstrates acceptance of responsibility for [her] offense." Even so, the Guidelines make clear that "[a] defendant who enters a guilty plea is not entitled to [this] adjustment . . . as a matter of right." Id. application note 3. "The defendant has the burden of proving [her] entitlement to an acceptance-of-responsibility credit, and the sentencing court's determination to withhold the reduction will be overturned only if it is clearly erroneous." United States v. Ocasio-Rivera, 991 F.2d 1, 4 (1st Cir. 1993) (citations omitted).

In this case, Vega's Pre-Sentence Report recommended a two point reduction in her offense level to reflect her acceptance of responsibility. See U.S.S.G. § 3E1.1(a). The district court tentatively agreed with that recommendation, but when Vega's attorney pressed for a third acceptance of responsibility point, see id. § 3E1.1(b), the court considered the matter more fully and decided against any acceptance of responsibility credit, basing its decision on the fact that Vega had wavered in her willingness to take complete responsibility for her criminal acts.

At the start of her plea colloquy, Vega claimed that she did not know about the other defendants' participation in the Loomis Fargo robbery until after they had gone into hiding. When pressed, Vega conceded that she actually had learned about their involvement in the robbery much earlier. But then, when Vega met with the United States Probation Office shortly before sentencing, she again tried to suggest that several days had passed after the robbery before she learned that the others, not just Ramos, had been involved. It was not clearly erroneous for the district court to conclude that on these facts, acceptance of responsibility credit was unwarranted. See United States v. Muriel, 111 F.3d 975, 982-83 (1st Cir. 1997) ("It is within the discretion of the district court to deny a reduction on the basis of its determination that a defendant has resorted to half-truths or evasions from the truth in an effort to minimize his or her culpability.").

### c.

Vega next argues that the district court should have given her a role reduction pursuant to U.S.S.G. § 3B1.2.

Under the Guidelines, a defendant's offense level should be reduced by two levels if she was a "minor participant" in the criminal activity. See U.S.S.G. § 3B1.2. To receive this adjustment, the defendant must show that she was "less

culpable than most other participants" in the offense of conviction. Id. application note 3. In this case, Vega contends that because she was merely an accessory after the fact, she is entitled to credit for being a minor participant in the robbery.

If Vega were charged with conspiracy, then we might have occasion to consider whether she was more or less culpable than those who actually carried out the robbery. But Vega only faced one count of acting as an accessory after the fact, and under U.S.S.G. § 3B1.2, the relevant inquiry is whether she was culpable with respect to this particular offense. See United States v. Neal, 36 F.3d 1190, 1211 (1st Cir. 1994) ("[S]ection 3B1.2 focuses on the role of a defendant with respect to the offense(s) of which he was convicted."); see also U.S.S.G. § 2X3.1 application note 2 (indicating that mitigating role adjustments "normally would not apply" to those charged with acting as an accessory after the fact "because an adjustment for reduced culpability is incorporated in the base offense level" for that offense).

Even if Vega was less blameworthy than those who committed the robbery, she was as much of an accessory after the fact as the others charged with that offense, Raphael Baez-Gonzalez and Rodolfo Landa-Rivera. As we have said, in addition

to helping Ramos secrete the proceeds of the robbery, Vega also used a false identity to obtain three hotel rooms for the other defendants.  On these facts, we cannot say that the district court's refusal to grant a role-in-the-offense adjustment was clearly erroneous.  See United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995) (observing that "battles over a defendant's status . . . will almost always be won or lost in the district court").

**D.**

Vega's final argument is that she should have received a downward departure from the Guidelines because she had a difficult upbringing and because extended incarceration would disrupt her relationship with her three young children.

District courts have the discretion to depart from the sentencing range that the Guidelines suggest if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." Koon v. United States, 518 U.S. 81, 92 (1996) (quoting 18 U.S.C. § 3553(b)) (internal quotation marks omitted).  "[E]xtraordinary characteristics such as unusual family obligations . . . may, in certain circumstances, provide a basis for a downward departure." United States v. Grandmaison, 77 F.3d 555, 564 (1st Cir. 1996).  Generally

speaking, a district court's refusal to depart is not subject to appellate review unless the court misapprehended its authority to do so or committed some other mistake of law. See United States v. DeCosta, 37 F.3d 5, 8 (1st Cir. 1994).

In this case, the district court was well-aware of its discretion to grant a downward departure if "big, major, unique circumstances" warranted a sentence below the applicable guideline range. The district court chose not to exercise that discretion because, in its view, Vega's family circumstances were not sufficiently unusual to justify a reduced sentence. Although Vega disagrees, we are not empowered to second-guess the district court in this regard. Where the trial court understood its authority to depart from the Guidelines, its refusal to exercise that authority represents a factually intensive determination that is not open to appellate review. See United States v. Caron, 208 F.3d 321, 323 (1st Cir. 2000) (observing that "refusals to depart are generally unreviewable").

### III.

### Conclusion

For the foregoing reasons, we affirm the defendant's sentence.

**Affirmed.**